[Nos. 15698–5–I; 16648–4–I. Division One. July 28, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. ALEX ROGERS, *Appellant.*

*In the Matter of the Personal Restraint of* ALEX ROGERS, *Petitioner.*

---

*Alex Rogers,* pro se; *Raymond H. Thoenig* of *Washington Appellate Defender Association; James E. Lobsenz* and *Wolfe & Cullen,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Deborah J. Phillips, Deputy,* for respondent.

PEKELIS, J.—Alex Rogers appeals his conviction for one count of first degree robbery and one count of first degree burglary. He alleges that the trial court erred in failing to suppress the victim's showup identification, and in a pro se supplemental brief, alleges that the jury was prejudiced. Consolidated with this case is Rogers' personal restraint petition (PRP) in which he maintains that he was denied effective assistance of counsel because his attorney failed to challenge the validity· of his arrest for lack of probable cause. We disagree with his contentions, affirm the conviction, and dismiss the petition.

Rogers was charged by information with one count of first degree robbery and one count of first degree burglary for an incident that occurred in the Seattle apartment of Louis Baker on August 4, 1984. Rogers moved to suppress all evidence resulting from Baker's showup identification of him which occurred at the time of his arrest. On October 4, 1984, a suppression hearing was held before the criminal motions judge. Baker and Detective Kim Franklin testified.

At the hearing, Baker, in his seventies, testified that between 9 and 10 a.m. on August 4, 1984, a man with a backpack came to his apartment and asked for a cigarette and a drink. Baker testified that the man spoke "kind of broken" and told him he was an Eskimo. Baker thought that he was between 28 and 30 and described him as "short

and chunky", approximately "5'3" or 5'4"," "probably 145, 150 pounds," and with sandy hair that was turning gray, "what they call salt and pepper." His recollection was also that the man was very burly chested and his arms, one of which was tattooed, were quite muscular, just like he had been a prizefighter. The man told Baker that his name was Joe, but would not give a last name.

Baker testified further that he gave him two cigarettes and a bottle of beer, and the man then stated: "'I want your money.'" When the man tried to get into his pockets, Baker kicked him in the stomach and knocked him down. The man stated: "'I will show you how we use [sic] to kill them in the Marine Corps. Are you ready to die?'" The man swung at Baker with his backpack, knocking his glasses off. The man then grabbed a hacksaw in the apartment, cut Baker's neck and ear with the blade, and then beat him across the head with the handle. The entire incident took between 20 and 25 minutes, during which time the man was never out of Baker's sight.

Baker testified that after being treated at Cabrini Hospital, he went to a tavern to drink coffee. A police officer came to take him back to his apartment to see if he could identify the assailant. From the patrol car, Baker saw the man coming down the stairs, about 6 or 7 feet away, and said "That's him right there." He stated that he was sure because the man spoke broken English and was husky, "5'4", maybe, 5'5", 5'6" tall, probably 145, 150 pounds." He testified that he was not wearing his glasses when he identified him and admitted that he had difficulty seeing without them. However, he had no doubt that the man was the one who had attacked him earlier.

Detective Franklin testified that around 1 p.m. on August 4, 1984, she and her partner were dispatched to Baker's apartment building because the suspect in Baker's assault had returned. They went to apartment 38 where an Indian male answered the door. She described the man as having

dark brown hair, dark brown or black eyes, medium complexion, medium build, and was about 5 feet 6 inches and 170 pounds.

In fluent English, the suspect denied any involvement in the assault, stated that his name was Alex Rogers, and gave the officers identification. He was advised of his rights and arrested. The two officers and Rogers walked out of the apartment together, with one officer in front and one behind, and from approximately 10 feet away inside the patrol car Baker identified Rogers as his assailant. En route to the jail, one of the officers asked Rogers if he had ever been in the service. Rogers replied that he had been in the Marines. Having considered the foregoing testimony, the court denied Rogers' motion to suppress.

At trial, Baker essentially repeated the recitation of the assault and the showup which he made at the October 4 hearing. There were some inconsistencies between his testimony at trial and at the suppression hearing. For example, he estimated that he was 18 feet from Rogers when he identified him instead of 7 feet, and he testified twice that he was wearing glasses when he identified Rogers and twice that he was not. However, there was additional testimony substantiating the identification of Rogers as the assailant. Baker testified that Rogers told him he had come from the third floor where he lived, and Officer Carl Fogassy testified that Rogers told him, as he had similarly told Baker, "'I am not Indian. I am an Eskimo.'"

At trial, the State relied in part upon Baker's initial description to police and subsequent identification. In addition, Detective Franklin testified that among the items recovered from Baker's room after the assault was a purple nylon pack with gray straps with "Alex Rogers, Anchorage, Alaska" printed on the front. Inside the pack were some clothes and a plastic cup with "Alex Rogers, Alaska" written on it. The jury found Rogers guilty of both counts.

Rogers contends that the court erred in refusing to sup-

press Baker's showup identification of him. He argues that the identification should have been suppressed because under the facts there was a substantial likelihood of irreparable misidentification. He also complains that the court improperly focused on the conduct of the police rather than on the reliability of Baker's identification.

■ Preliminarily, we address the proper standard of review of this issue. While the findings of the trial court following a suppression hearing are of great significance to a reviewing court, the constitutional rights at issue require us to independently evaluate the evidence. *State v. Daugherty,* 94 Wn.2d 263, 269, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958 (1981); *State v. Dresker,* 39 Wn. App. 136, 139–40, 692 P.2d 846 (1984). In considering credibility, however, deference will be given to the trial court, which had the opportunity to evaluate the demeanor of the witnesses. *In re Bugai,* 35 Wn. App. 761, 765, 669 P.2d 903 (1983); *State v. Hoyt,* 29 Wn. App. 372, 381, 628 P.2d 515 (1981).

■ Although the practice of showing suspects singly to persons for the purpose of identification has been widely condemned, whether there is a due process violation depends on the totality of the circumstances. *Stovall v. Denno,* 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967); *State v. Kraus,* 21 Wn. App. 388, 391–92, 584 P.2d 946 (1978). Showup identifications are not per se unnecessarily suggestive, and one held shortly after the crime is committed and in the course of a prompt search for the suspect is permissible. *State v. Springfield,* 28 Wn. App. 446, 447, 624 P.2d 208 (1981). Evidence of a showup identification should be excluded only if the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968), *quoted in State v. Booth,* 36 Wn. App. 66, 70, 671 P.2d 1218 (1983). The key inquiry in

determining admissibility of the identification is reliability. *Manson v. Brathwaite,* 432 U.S. 98, 114, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977); *Booth,* at 70. Factors to consider include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

*Manson v. Brathwaite, supra* at 114; *State v. Bockman,* 37 Wn. App. 474, 482, 682 P.2d 925, *review denied,* 102 Wn.2d 1002 (1984).

While the findings and conclusions of the suppression judge do not demonstrate that he specifically considered the *Manson* factors,[1] the proper test was argued by the prosecutor to the court before it made its ruling. Further, given the de novo nature of our review of the decision to suppress, we determine, after taking into consideration the *Manson* factors, that the court's decision was a correct one.

Baker had sufficient opportunity to view Rogers. He testified that he "got a very good look" at the assailant before his glasses were knocked off and that during the approximately 20 minutes the assailant was in his room he was never out of Baker's sight. Baker's description of Rogers was essentially accurate and the level of certainty high when he identified him as he was coming down the stairs. At most, 6 hours had elapsed between the incident and the showup, well within the permissible range. *E.g., Springfield,* at 448 (17 hours permissible).

---

[1]The judge concluded:

"The court found that there was a show up identification by Louis Baker. The court found that Mr. Baker is elderly and was not wearing his glasses at the time of the identification. The court concluded that the problem with the identification is that it is a weak identification; however, that goes to weight, not to admissibility. The court concluded that the evidence does not support the conclusion that the procedures used to take Mr. Baker to the apartment were suggestive. The court concluded that, under the totality of the circumstances, the evidence is admissible and the motion to suppress the identification is denied."

■ Therefore, our independent analysis of the evidence under the *Manson* factors demonstrates that the showup identification meets the threshold test of reliability and is admissible. We further note that what inconsistencies there were in the testimony were made apparent to the jury as was the fact that Baker had difficulty seeing without his glasses. As the suppression judge concluded, the weight to be given Baker's identification presented a question for the jury to resolve. Judgment regarding the credibility of witnesses and the weight of evidence is the exclusive function of the jury. *State v. Smith*, 31 Wn. App. 226, 228, 640 P.2d 25 (1982).

■ In his pro se supplemental brief, Rogers next argues that his constitutional right to a fair trial was violated. He claims that the jury was prejudiced against him because he is an Indian while all the jurors were non–Indian. Rogers had the burden of proving that there has been discrimination in his case. He does not allege that there was a purposeful exclusion of Indians from the venire through peremptory challenges or any other method. *Cf. Batson v. Kentucky*, __ U.S. __, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). It is not enough that there were no members of his race on the jury. *State v. Sellers*, 39 Wn. App. 799, 802, 695 P.2d 1014 (1985). Rogers has failed to meet his burden of proof.

In addition, Rogers contends that he was "set up" by the police officers who arrested him because he stood between them when Baker identified him. We have already decided that the showup was fair, and this contention has no merit.

■ Finally, in a PRP, Rogers contends that he was denied effective assistance of counsel in violation of the Sixth Amendment and Const. art. 1, § 22 (amend. 10) because his attorney did not recognize there was a lack of probable cause to justify his arrest and thus did not raise this issue. Rogers argues that the showup identification should have been suppressed as a fruit of the illegal arrest.

The petitioner bringing a PRP must establish that, more likely than not, he or she was actually prejudiced by constitutional error. *In re Gunter,* 102 Wn.2d 769, 773–74, 689 P.2d 1074 (1984); *In re Hews,* 99 Wn.2d 80, 89, 660 P.2d 263 (1983).

 In order to show that there has been ineffective assistance of counsel requiring reversal of a conviction,

> [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052, 2064 (1984); *State v. Jeffries,* 105 Wn.2d 398, 418, 717 P.2d 722 (1986). The reviewing court need not address both prongs of the test if the defendant makes an insufficient showing on one prong. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Strickland,* at 697.

Rogers has not met his burden under *Strickland* because he has not demonstrated that he was prejudiced by his attorney's performance. Even assuming the showup identification should not have been admitted,[2] Rogers is unable to show that without the evidence there is a reasonable probability that the result of his trial would have been different. *Strickland,* at 694. While Baker's description of Rogers was inconsistent in some respects, it was essentially accurate as to height, weight, and general racial type. We

---

[2]We note parenthetically that there were sufficient facts to establish probable cause to arrest.

further note the corroborating testimony regarding Rogers' affiliation with the Marine Corps and his insistence at the time of the incident that he was Eskimo rather than Indian. Finally, there was the in–court identification by Baker and the incriminating facts that Rogers' backpack and plastic cup with his name printed on them were found in Baker's apartment. Thus, even without the showup identification, there was abundant evidence to convict Rogers, and under the *Strickland* standard he was not prejudiced by his attorney's performance.

We affirm the conviction and dismiss the petition.

RINGOLD, A.C.J., and GROSSE, J., concur.

After modification, further reconsideration denied October 27, 1986.