2013 MAR 11 AM 7:51

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 68631-3-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| D.C.D., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 11, 2013 |

SPEARMAN, A.C.J. — Juvenile respondent D.D. (D.O.B.: 12/30/94) was

adjudicated guilty of burglary in the second degree. On appeal, he claims the

juvenile court committed reversible error in denying his motion to suppress

evidence of a witness's show-up identification and the subsequent identification

at trial. We conclude the evidence was properly admitted because the

identification procedure was not unduly suggestive and, even if it was, it did not

create a substantial likelihood of irreparable misidentification. We affirm.

## FACTS

On Sunday, October 23, 2011, at approximately 11:48 a.m., a silent alarm

was activated at Meany Middle School, located at 301 21st Avenue East in

Seattle. The school building was secured, nobody had permission to be inside,

and no activities were scheduled for that day.[1] Security response specialist Fiafia Faletogo arrived within 15 to 20 minutes. Inside the building, he discovered broken glass on the floor outside the office and saw that the office's reception window had been broken.

Faletogo looked through the window into the office and saw a black male in his late teens, wearing a white, long-sleeved top. The youth was looking through cabinets. Faletogo used his radio to call the alarm desk monitor, who patched in a 911 operator. He kept his voice low, exited the building, and stood outside a security door, which had a large window. Looking through the window, he saw the same youth and another youth casually walk by, two to four feet away from him. The second youth was wearing a dark blue or black zip-up windbreaker or jacket.[2] Faletogo estimated both youths to be between six feet to six feet two inches in height. At 12:17 p.m., he described them to the 911 operator as "two black males, one wearing white, one wearing black, late teens." Verbatim Report of Proceedings (VRP) 2VRP at 55; Ex. 48. Faletogo made eye contact with the youths for three to five seconds. The youths ran north up the hallway and out of sight.

The police soon responded to the area and observed two young men who matched the description of the suspects walking within blocks of the school. The

---

[1] This brief refers to the verbatim report of proceedings as follows: 1VRP–3/12/2012; 2VRP–3/13/2012; 3VRP–3/16/2012.

[2] Faletogo variously described the jacket as "dark blue," "black," and "dark." 2VRP at 16, 46 (testifies it was dark blue); 2VRP at 54-55 (tells dispatcher it is black); 2VRP at 59 (states "dark top" to police).

officers lost sight of them but soon saw them again. After a brief foot chase, the officers detained the young men, later identified as D.D. and D.J.

The officers transported Faletogo by car to the locations of both suspects, who were separately detained several blocks from the school. They told Faletogo that two people has been stopped and they needed him to determine whether the two were the same people he had seen in the school. One of the officers may have mentioned that the two young men had run from the police. Faletogo was first asked to view D.J., whom he positively identified as the youth wearing white. He was then taken to view D.D., who was handcuffed by a patrol car and standing with at least one officer. Faletogo positively identified D.D. as the second male he had seen in the school. He recognized D.D.'s face, height, complexion, and jacket. The show-up identification of D.D. was done at 12:29 p.m.

A search incident to arrest of D.D. revealed a screwdriver and a package of Hi-Chew candy on his person. A search of D.J. revealed he also had a package of Hi-Chew. Multiple boxes of Hi-Chew—sold by the school's student association for fundraising—were located inside the school near the scene of the burglary. D.J.'s fingerprints were lifted from an empty bag of chips found in a garbage can at the school.

The State charged D.D. with one count of burglary in the second degree. D.D. moved to suppress evidence of Faletogo's show-up and in-court identifications, arguing the procedures used by police were impermissibly

3

suggestive and violated due process. The motion was denied. The juvenile court

made CrR 3.6 findings of fact and the following conclusions of law:

    a. The show-up was suggestive based on the fact [D.D.] was in handcuffs during the show-up and the fact [D.D.] was standing next to a patrol car during the show-up.

    b. The totality of circumstances evidences the show-up was not impermissibly suggestive.

    c. Even if the show-up was impermissibly suggestive, Faletogo's identification of [D.D.] at the show-up was reliable based on the fact that (1) Faletogo had sufficient opportunity to view [D.D.] at the time of the crime, (2) Faletogo was focusing his full attention on the two males in the hallway, (3) Faletogo accurately described [D.D.'s] race, age and clothing to the 911 dispatcher, (4) Faletogo was absolutely sure at that show-up that [D.D.] was the second male inside the school, and (5) only twelve minutes passed between the 911 call and the show-up with [D.D.].

Clerk's Papers (CP) at 26-29. At trial, Faletogo identified D.D. as the second

individual he saw in the school. D.D. testified in his own defense.[3] The trial court

adjudicated D.D. guilty. D.D. timely appeals.

## DISCUSSION

We review the trial court's determination on a motion to suppress for

substantial evidence and to see if the findings support the conclusions of law.

State v. Schlieker, 115 Wn. App. 264, 269, 62 P.3d 520 (2003). Unchallenged

---

[3] D.D. denied entering the school that day. He testified that on the morning of October 23, 2011, he was playing basketball at the Miller Community Center (adjacent to Meany Middle School) with D.J. and a third young man, whom D.D. did not know. D.J. and the other male left, indicating they would be right back. The other male was African-American and approximately D.D.'s age and height. D.D. was sweaty and removed his shirt. After 15 to 20 minutes, only D.J. returned and he was frantic. D.J. was running and shouted at D.D. to "[r]un, bro, run." 3VRP at 17, 25. The two ran several blocks before stopping to catch their breath. D.J. noticed D.D. was not wearing a shirt and gave him his black jacket to wear. D.D. saw a pursuing police officer and, due to his fear of police, started running again. He stopped when an officer drew his gun. D.D. testified that he had bought the Hi-Chew earlier in the day and used exact change; he did not carry a wallet or have any cash or coins on his person at the time of his arrest. D.D. stated that the screwdriver in the jacket pocket belonged to D.J.

4

findings are verities on appeal. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Evidence is substantial if it is sufficient to persuade a fair-minded, rational person. Id. We review a trial court's conclusions of law de novo. State v. Armenta, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997).

An out-of-court identification procedure satisfies due process if it is not so impermissibly suggestive as to give rise to "'a substantial likelihood of irreparable misidentification.'" State v. Linares, 98 Wn. App. 397, 401, 989 P.2d 591 (1999) (citing State v. Vaughn, 101 Wn.2d 604, 682 P.2d 878 (1984)). A defendant claiming a due process violation must first establish that the identification procedure was unduly suggestive. Id. If this threshold burden is satisfied, the court then determines whether, under the totality of the circumstances, the procedure was so suggestive as to create a substantial likelihood of irreparable misidentification. Id. The key inquiry in determining admissibility is whether the identification is reliable despite any suggestiveness. State v. Rogers, 44 Wn. App. 510, 515-16, 722 P.2d 1349 (1986) (citing Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977)). Generally, a show-up identification held shortly after a crime and in the course of a prompt search for the suspect is permissible. State v. Springfield, 28 Wn. App. 446, 447, 624 P.2d 208 (1981), overruled in part on other grounds by State v. Freeman, 153 Wn.2d 765, 108 P.3d 753 (2005).

### Suggestiveness of Procedure

D.D. contends the procedure was impermissibly suggestive because (1) D.D. was handcuffed, standing near a police car, and in the presence of at least

5

one officer; (2) a police officer may have told Faletogo that the two suspects he was about to view had run from police; and (3) just before looking at D.D. Faletogo correctly identified D.J. as the first person he saw. As to the last point, D.D. contends this would have suggested to Faletogo that the next person he was about to view was the second person he had seen in the school.

We disagree. Although there was some suggestiveness to the procedure, the juvenile court did not err in concluding it was not impermissibly suggestive. As to D.D.'s first point, the court in State v. Guzman-Cuellar, 47 Wn. App. 326, 335-36, 734 P.2d 966 (1987) held the fact that a suspect is handcuffed and standing near a police car alone is not enough to demonstrate impermissible suggestiveness. Regarding the second point, assuming police told Faletogo the suspects had run from them,[4] this would have been somewhat suggestive. However, the officers made no remarks to Faletogo concerning D.D.'s involvement in the specific crime being investigated and did not suggest that Faletogo had to positively identify the detained suspects. As to D.D.'s third point, it is unclear how Faletogo's own identification of the first suspect impermissibly influenced his own identification of the next suspect. D.D. cites no authority in support. Moreover, Faletogo expressed no doubts about his identification of D.D., saying he was absolutely sure D.D. was the second person he had seen in the school.

---

[4] The police officer who drove Faletogo to the show-up identifications testified that he did not recall with certainty but that he "may have said something to the effect of, we've detained two people that had run from us." 2VRP at 97. The juvenile court made no finding as to whether the officer made this statement.

6

Substantial Likelihood of Irreparable Misidentification

The juvenile court also found that even if the show-up identification was impermissibly suggestive, the circumstances surrounding Faletogo's identification show that it was sufficiently reliable. We agree.

Factors to be considered in determining reliability of the identification include (1) the opportunity of the witness to observe the suspect at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the suspect; (4) the level of certainty demonstrated at the time of the identification; and (5) the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Linares, 98 Wn. App. at 401.

With respect to the first factor, D.D. assigns error to the juvenile court's finding that Faletogo had sufficient opportunity to view D.D.'s jacket and face. He contends this finding is not supported by substantial evidence because Faletogo made eye contact with the two youths for only three to five seconds. But Faletogo observed the youths for more than those few seconds of direct eye contact; was only several feet from them; viewed their faces through a clear glass window; and testified he had a clear opportunity to view them. Furthermore, his identification of the youths was based on more than their faces, and included characteristics such as their height, complexion, and clothing. The juvenile court's finding is supported by substantial evidence.

Second, Faletogo focused his full attention on the two youths. He was tasked with determining the reason for the alarm, and his responsibilities include

reporting criminal activity and relaying descriptions of suspects. He testified that he focused on D.D.'s face because he had already seen D.J.'s face and wanted to be able to identify D.D. D.D. contends Faletogo was distracted because he was on the radio reporting what he had seen. But the court properly found based on the evidence that Faletogo was not distracted by being on the radio, because his purpose for being on the radio was to give descriptions.

Third, Faletogo accurately described D.D.'s race, age, and clothing to the 911 dispatcher. Faletogo reported seeing two black males in their late teens, one wearing white and one wearing black. D.D. is a black male in his late teens and was wearing a black jacket when he was apprehended by police.[5] D.D. first contends Faletogo's description was too general. But Faletogo testified that he gave brief descriptions because he wanted the police to be dispatched quickly. D.D. also contends details Faletogo gave were not entirely accurate, disputing that the jacket he was wearing was a windbreaker-type jacket worn by athletes and noting that while Faletogo described the youths as "six feet to six feet two inches", he is six feet and D.J. is shorter than him. But a photograph of the jacket shows it is not inconsistent with Faletogo's description, and D.D. does not dispute that his height is in the range given by Faletogo.

Fourth, at the time of the show-up identification, Faletogo expressed no uncertainty or hesitation and was certain in his identification of D.D. as the second youth he had seen.

---

[5] The court found that any discrepancy in the color of D.D.'s jacket—whether dark blue, dark, or black—was minor.

Finally, as to the fifth factor, only 12 minutes elapsed between Faletogo's observation of D.D. at the school and the show-up identification. This is well within the permissible range for show-up identifications. See State v. Rogers, 44 Wn. App. 510, 516, 722 P.2d 1349 (1986) (six hours within permissible range); Springfield, 28 Wn. App. at 448, overruled on other grounds by Freeman, 153 Wn.2d 765 (2005) (17 hours permissible).

The juvenile court properly admitted evidence of Faletogo's show-up and in-court identifications.

Affirmed.

WE CONCUR:

Spearman, A.C.J.

Becker, J.