FILED
COURT OF APPEALS
DIVISION II

2013 SEP 24 AM 9: 25

STATE OF WASHINGTON

BY

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42202-6-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| JESSE SCOTT LAKE, | |
| Appellant. | |

BJORGEN, J. – A jury returned verdicts finding Jesse Scott Lake guilty of second degree incest for conduct against SL[1] and guilty of first degree child molestation and second degree incest for conduct against AM.[2] Lake appeals his convictions, asserting that the trial court erred by (1) excluding certain testimony as inadmissible hearsay, (2) not allowing him to testify about his lack of prior criminal history, (3) admitting as a trial exhibit his handwritten statement to police at the time of his arrest, (4) allowing testimony that Lake had told his wife that if she lost weight she would look more like her daughter, one of the child victims, (5) allowing testimony that certain witnesses had been victims of prior sexual abuse, and (6) allowing testimony that Lake had called the child victims "whores" and "sluts." Lake also asserts that cumulative error denied his right to a fair trial. In his statement of additional grounds for review, Lake repeats

---

[1] We use initials to identify the minor victims and certain witnesses under this court's General Order 2011-1. We also use initials to identify adult witnesses, apart from the defendant, who share a last name with the child victims to protect the victims' privacy.

[2] The jury also entered a verdict finding Lake not guilty of first degree child molestation for conduct against SL.

several of the arguments raised by his appellate counsel and also asserts that the trial court erred by (1) denying his motion to sever his charges for trial as to each victim, (2) allowing a witness to testify about a "black rubber circular thing" found in Lake's dresser, and (3) allowing a witness to testify about Lake's opinion regarding his daughter receiving counseling. Lake also asserts in his statement of additional grounds that the Milton police department's investigation of his crimes was flawed. We affirm.

FACTS

Lake is the biological father of SL and the stepfather of AM. AM's mother, KL, began a relationship and moved in with Lake in 1995. Shortly after KL moved in with Lake, he began touching AM inappropriately. Lake engaged in various acts of sexual contact with AM beginning when AM was in first grade and continuing until AM was 18 years old.

When AM was in the tenth grade, Lake began giving her massages that would include massaging her buttocks, breasts, and vaginal area while she was naked. These massages would take place nearly every day and would typically occur in Lake's bedroom with AM lying on his bed and Lake kneeling beside the bed. During some of these massages, Lake would have AM face away from him, and she could hear him grab something from out of his dresser and then feel him thrusting into the bed. On one occasion, Lake went to the bathroom to wash his hands and AM felt an object that she suspected was a sex toy placed between Lake's mattress and box spring. Sometime later, AM looked in Lake's dresser and found a rubber vagina, a rubber mouth, and lubrication.

Lake's biological daughter, SL, had visitation with him on the weekends. SL also lived full time with Lake for approximately a year when she was in the fifth grade. Starting around

this time, Lake would watch SL while she was in the shower and would follow her into her bedroom and watch as she got dressed. SL saw Lake engage in this same behavior with regard to AM. Lake would also rub both girls' buttocks and breasts while they were wearing only a towel.

In October 2008, AM began secretly dating BH. About four months into their relationship, BH became concerned that something inappropriate was taking place at AM's home based on AM's reaction when he tried to be intimate with her. BH discussed his concerns with SL, who told him that Lake was sexually abusing her and AM. The following day, BH told his father about the allegations and then reported the allegations to the police. The State charged Lake by third amended information with two counts of first degree child molestation and two counts of second degree incest for his conduct against AM and SL.

Before trial, Lake moved to sever his charges for trial as to each of the victims, which motion the trial court apparently denied.[3] Also before trial, the State filed a motion in limine to exclude evidence of Lake's lack of criminal history. The trial court granted the State's motion without objection from defense counsel. RP (3/1/2011) at 5.

At trial, SL testified about Lake's stated reasons for touching her and AM as follows:

> [SL]: [Lake] read in a book that girls should be touched by their dad otherwise they're going to grow up and be promiscuous and feel unloved and stuff like that just because of our neglect so we need to be touched.
> [State]: Okay. And did he ever tell you that if he didn't do that, that children would grow up to be whores?
> [SL]: Yes, I was trying to put it nicely but yes, we would be sluts and whores.

---

[3] The trial court's ruling on Lake's motion to sever his charges is not included in the record on appeal.

[State]: We need to know exactly what he said so you're not going to embarrass anyone here, okay?

[SL]: Okay.

[State]: So why don't you tell me what he said?

[SL]: Basically we would be sluts and whores if we were not touched by our father, that the neglect would be — we would try to find it elsewhere and the only boyfriend we needed, basically, was him and we didn't need anyone else.

[State]: Okay.

[SL]: That basically he was our boyfriend.

Report of Proceedings (RP) at 178-79. Defense counsel did not object to this testimony. Then the following exchange took place later in SL's testimony:

[State]: Would [Lake] ever call you or [AM] in front of you any derogatory names or anything like that?

[SL]: Yes.

[State]: What kind of names would he call you?

[Defense counsel]: Your Honor, I'm going to object as it being not relevant and 403(b).

[Trial court]: Overruled, you may answer the question.

[SL]: Slut, whore.

RP at 213-14. Over defense counsel's objection, the trial court allowed SL to testify that Lake had told KL that if KL lost weight, she would look like AM. SL also testified that to her knowledge her father was not Native American, and that her family was not registered as Native Americans.

On the second day of trial, the State requested the trial court to revisit a prior ruling excluding evidence that KL and her sister, TM, had been sexually abused by their father when they were children. The State argued that the evidence was relevant because TM indicated that she became concerned and confronted KL about behavior she had witnessed between Lake and AM based on her and KL's past abuse. The trial court ruled:

As to the prior child abuse, I think that is relevant, and does not in any way implicate the defendant or pass on his character, his prior bad act, it explains

4

No. 42202-6-II

why this person might be extra sensitive when she sees something happening in the home. So as to that issue, I'm allowing it.

RP at 229.

During the cross-examination of BH, defense counsel asked BH to state what KL had told him during a telephone conversation. The State objected to defense counsel's question, asserting that it would elicit hearsay testimony; the trial court sustained the objection. When KL testified for the defense, defense counsel also asked her to state what she had told BH during a telephone conversation, and the trial court sustained the State's hearsay objection.

After Lake testified that he was a Native American from the Seneca tribe, the following exchange took place:

> [Defense counsel]: Are you registered?
> [Lake]: No, sir.
> [Defense counsel]: Okay. Do you know the reasons why—what's the history of the registration?
> [Lake]: The history of the registration was they started in the Dawes and it was named after the guy Dawes.
> [State]: Your Honor, I would object to his narrative. Questions and answers, not—
> [Trial court]: Yes, I'd rather not get into a narrative.
> [Defense counsel]: I don't want to get too much but it did come up with [SL], that's why I'm even asking, Your Honor.
> [Trial court]: Can you ask him a more specific question then [sic] what's the history of the registration. I mean, that's a pretty broad area, maybe you could narrow it. Thank you.
> [Defense counsel]: That's fair enough. In fact, I'll repeat that question.
> [Defense counsel]: What is the history of the registration?
> [State]: Well, Your Honor, same thing—
> [Trial court]: No, I actually meant that I—I think that's a little too broad.
> [Defense counsel]: Oh, too broad, okay.
> . . . .
> [Defense counsel]: Without going into so much of that, why are you not registered as a Native American?
> [Lake]: My great, great grandparents chose not to be registered because if they were to get registration—
> [State]: Well, Your Honor—

5

. . . .

[State]: I'm not sure that this is from personal knowledge. I'm not sure what this answer is based on.

[Trial court]: Do you want to lay some foundation?

[Defense counsel]: Do you have knowledge as to why there is no registration?

[Lake]: Yes, sir.

[Defense counsel]: And where does the history or the reasons why come from?

[Lake]: My father and my uncle who—it's been handed down orally.

[Defense counsel]: Orally?

[Lake]: Yes, sir, it's an oral tradition.

[Defense counsel]: In writing as well and oral tradition?

[Lake]: Yes, sir.

. . . .

[Defense counsel]: Okay. That would be—

[State]: I think that is hearsay, Your Honor.

[Trial court]: It is hearsay.

[Defense counsel]: The writing part of it.

[State]: It's still hearsay.

. . . .

[Defense counsel]: Did you learn—well, let me ask you this. I'll get back to that. So are all Native Americans registered?

[Lake]: No, sir, most Native Americans are not registered.

[Defense counsel]: Okay. And you have grown up as a Native American?

[Lake]: Yes, sir.

RP at 713-15.

During Lake's cross-examination, the State asked why he omitted certain details to the police when providing them with a written statement. Then, during redirect, defense counsel attempted to ask Lake whether he had ever been previously investigated, but the trial court sustained the State's objection based on its ruling on the State's motion in limine to exclude evidence of Lake's lack of a prior criminal history. During closing, the State argued that Lake's testimony included details that he did not give to police in his written statement.

The jury returned a verdict finding Lake not guilty of first degree child molestation for conduct against SL and returned verdicts finding Lake guilty of second degree incest for conduct

6

against SL and guilty of first degree child molestation and second degree incest for conduct against AM. Lake timely appeals his convictions.

## ANALYSIS

### I. HEARSAY

Lake first contends that the trial court erred by excluding certain testimony as inadmissible hearsay. We disagree.

We review a trial court's decision to exclude or admit evidence at trial for an abuse of discretion. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997). A trial court abuses its discretion if its decision "is manifestly unreasonable or based upon untenable grounds or reasons." *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Evidence constituting hearsay is not admissible at trial unless an exception applies. ER 802. Here, defense counsel attempted to elicit testimony from KL describing the content of a conversation she had with BH:

> [Defense counsel]: [W]hat did you do once you had that phone number?
> [KL]: I called it.
> [Defense counsel]: Okay. And did you get an answer?
> [KL]: Yes.
> [Defense counsel]: And was it a male or a female that answered?
> [KL]: It was male.
> [Defense counsel]: Okay. Did you know who it was at that time?
> [KL]: No.
> [Defense counsel]: Did you talk to that person?
> [KL]: Yes.
> [Defense counsel]: What did you tell that person?

RP at 654. The State objected to defense counsel's question on the basis that it would elicit hearsay testimony, and the trial court sustained the objection. Then, outside the presence of the

7

jury, defense counsel argued that the testimony was not being offered to prove the truth of any matter asserted and instead was being offered to show that a conversation had occurred and to show what action KL took as a result of the conversation. The trial court responded, "Then all you need to do is say we had a conversation, I had a conversation with [BH], you don't need to get into the content of the conversation and as a result of the conversation did you take action, yes, I did and here's what I did." RP at 660. Following the trial court's ruling, KL testified that she had a conversation with BH and, as a result, she found out that BH had been texting her daughter.

We can discern no error from the trial court's ruling excluding this evidence as inadmissible hearsay. Defense counsel's question asking KL to relay the content of a conversation she had with BH would have elicited out-of-court statements, and defense counsel was able to achieve its stated purpose for offering the evidence without eliciting hearsay testimony.[4] In addition, to the extent that Lake contends the trial court erred by excluding testimony regarding the actual content of KL and BH's conversation, that issue is not preserved for appeal, since defense counsel did not present the trial court with an offer of proof as required under ER 103(a)(2).

---

[4] Lake also appears to assign error to the trial court's ruling excluding as inadmissible hearsay BH's testimony in regard to this same telephone conversation between BH and KL. Lake mentions the trial court's ruling excluding BH's hearsay testimony in the fact section of his brief but does not present argument addressing that ruling in the argument section of his brief. Accordingly, we do not address it. RAP 10.3(a)(6); *see also State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004) (absent supporting argument or citations to relevant authority, an assignment of error is waived).

Lake also contends that the trial court erred by sustaining the State's hearsay objection to testimony describing the source of Lake's knowledge that he is Native American. Again, we disagree. Here, the trial court excluded testimony that Lake's father and uncle told Lake that their family was Native American. Thus, Lake sought to present testimony consisting of out-of-court statements to prove the truth of his Native American heritage. Lake does not explain in his brief how this proffered testimony fell outside the definition of "hearsay" and does not state any exception to the hearsay rule allowing for this testimony to be presented at trial. Accordingly, we hold that the trial court properly excluded the testimony as inadmissible hearsay.

## II. EVIDENCE OF LACK OF PRIOR CRIMINAL HISTORY

Next, Lake asserts that the trial court denied his due process rights by not allowing him to testify as to his lack of prior criminal history. Because Lake failed to object to the trial court's ruling excluding evidence of his lack of prior criminal history, we hold that he has waived the issue on appeal. Trial counsel must specifically object at trial to preserve an evidentiary issue for appellate review. RAP 2.5(a); *State v. Perez-Cervantes*, 141 Wn.2d 468, 482, 6 P.3d 1160 (2000); *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985). Further, a party may only assign error in the appellate court on the specific ground of evidentiary objection made at trial. *State v. Fredrick*, 45 Wn. App. 916, 922, 729 P.2d 56 (1986) (citing *Guloy*, 104 Wn.2d at 422).

Here, the trial court granted the State's motion in limine to exclude any evidence of Lake's lack of prior criminal history without objection from defense counsel. Then, when defense counsel asked Lake whether he had ever been investigated before his arrest, the trial court sustained the State's objection based on its previous ruling on the State's motion in limine.

9

Further, defense counsel did not ask the trial court to revisit its prior ruling. Accordingly, Lake has failed to preserve this issue for appeal and we do not address it further.

### III. RELEVANCE /ER 403

Next, Lake assigns error to two of the trial court's rulings admitting evidence at trial, asserting that the evidence was not relevant and, alternatively, that the prejudicial effect of the evidence outweighed its probative value. Again, we disagree.

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). Relevant evidence is any evidence that has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. All relevant evidence is admissible unless its admissibility is otherwise limited. ER 402. "The threshold to admit relevant evidence is low, and even minimally relevant evidence is admissible." *State v. Gregory*, 158 Wn.2d 759, 835, 147 P.3d 1201 (2006). Under ER 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

Lake first asserts that the trial court erred by overruling his objection to SL's testimony that Lake had told KL that she would look more like AM if KL lost weight. The State argued at trial that the testimony was relevant because it tended to show that Lake was sexually attracted to AM because, in Lake's view, AM was a younger and thinner version of his wife. The State is correct. This evidence meets the low threshold of relevance as it supported an inference that Lake touched AM for the purpose of satisfying a sexual desire, an essential element of the crimes of first degree child molestation and second degree incest. RCW 9A.44.010(2), .083; RCW

10

9A.64.020. Additionally, although the probative value of this evidence to the issue of Lake's sexual attraction to AM is admittedly low, we hold that the probative value of the evidence is not outweighed by the danger of unfair prejudice in light of the extensive testimony by AM regarding Lake's sexual conduct against her.

Lake also asserts that the trial court erred by admitting evidence that KL and TM had been sexually abused as children by their father. We agree with the trial court that this evidence was relevant to provide a context for the reasons TM became concerned when she observed Lake's behavior of walking in the bathroom and shutting the door while AM was naked in the shower. In addition, the probative value of this evidence was not outweighed by the danger of unfair prejudice, because the evidence did not reflect on Lake's character. Accordingly, the trial court did not err by admitting evidence that KL and TM had been sexually abused by their father.

## IV. RELEVANCE/ER 404(b)

Next, Lake asserts that the trial court erred by overruling his objection to SL's testimony that Lake had called her and AM "sluts" and "whores." Br. of Appellant at 17. At trial SL testified, without objection, that Lake had told her and AM that they would grow up to be "sluts and whores" if he did not touch them. RP at 178. Because Lake did not object to this testimony at trial, he waived any objection to it on appeal. RAP 2.5(a). The State later asked SL if Lake called her or AM any derogatory names, to which defense counsel objected "as it being not relevant and 403(b)."[5] RP at 214. After the trial court overruled defense counsel's objection, SL testified that Lake called her and AM "[s]lut" and "whore." RP at 214.

---

[5] For the sake of Lake's argument on appeal, we assume that his defense counsel meant to object under ER 404(b) not ER 403(b).

Under ER 404(b),

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Before admitting ER 404(b) evidence, a trial court, "'must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.'" *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007) (quoting *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)). "This analysis must be conducted on the record." *Foxhoven*, 161 Wn.2d at 175.

We review the erroneous admission of evidence under ER 404(b) under the nonconstitutional harmless error standard. *State v. Gresham*, 173 Wn.2d 405, 425, 269 P.3d 207 (2012). Under this standard, an error is harmless "'unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *Gresham*, 173 Wn.2d at 425 (internal quotation marks omitted) (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

Assuming without deciding that the trial court erred in admitting this evidence, we hold that the error was harmless. The admission of evidence that Lake called SL and AM "[s]lut" and "whore" did not have a material effect on the outcome of Lake's trial in light of SL's previous testimony that Lake had stated AM and SL would grow up to be "sluts and whores" if he did not touch them, to which Lake did not object.

IV. ADMISSION OF LAKE'S WRITTEN STATEMENT TO THE POLICE

Next, Lake contends that the trial court erred by admitting his handwritten statement to the police as a trial exhibit.[6] We hold that Lake failed to preserve this contention for appeal. At trial, Lake objected to his handwritten statement being admitted as a trial exhibit, but did not object to the statement being read to the jury. When the trial court asked for legal authority supporting Lake's position that the statement could be read to the jury but not be admitted as a trial exhibit, defense counsel asked the court to reserve its ruling until he could research the issue. Then, when the trial court revisited the issue of admitting Lake's handwritten statement as a trial exhibit, defense counsel merely renewed his previous objection, but did not provide the trial court with any additional legal authority to support his position that the statement was inadmissible as a trial exhibit. Because Lake failed to articulate a specific objection to the admission of his statement to the police as a trial exhibit, we hold that he has waived any objection to its admission on appeal. RAP 2.5(a); *Guloy*, 104 Wn.2d at 422.

V. CUMULATIVE ERROR

Finally, Lake contends that cumulative errors by the trial court resulted in a fundamentally unfair trial requiring reversal of his convictions. Under the cumulative error doctrine, a defendant may be entitled to a new trial if several trial errors, standing alone, are not grounds for reversal, but, when combined, the error denied the defendant a fair trial. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). Because the only potential error here was the trial court's failure to conduct an ER 404(b) analysis on the record when admitting evidence that

---

[6] Lake did not designate this exhibit in the record on appeal.

Lake had called AM and SL "[s]lut" and "whore," which we have held to be harmless, the cumulative error doctrine does not apply.

### VI. STATEMENT OF ADDITIONAL GROUNDS (SAG) ISSUES

In his SAG, Lake first repeats several of his appellate attorney's contentions with the trial court's evidentiary rulings. Because we have resolved those issues as argued by his appellate counsel, we do not address them again here.

Next, Lake asserts in his SAG that the trial court erred by denying his motion to sever his charges for trial as to each victim. We review a trial court's denial of a motion to sever charges for a manifest abuse of discretion. *State v. Bythrow*, 114 Wn.2d 713, 717-18, 790 P.2d 154 (1990). Washington law disfavors separate trials. *State v. Medina*, 112 Wn. App. 40, 52, 48 P.3d 1005 (2002). But under CrR 4.4(b), the trial court "shall grant a severance of offenses whenever . . . the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." A defendant seeking severance of charges must show that a trial on multiple counts would be so manifestly prejudicial as to outweigh the concern for judicial economy. *Bythrow*, 114 Wn.2d at 718. Although the record on appeal contains Lake's motion to sever his charges and the State's response thereto, it does not include any record of the trial court's decision denying his motion to sever. Accordingly, on this record we cannot determine the trial court's reasons for denying Lake's severance motion and, thus, we cannot review Lake's claim that the trial court manifestly abused its discretion by denying his severance motion.

Next, Lake contends that the trial court erred by allowing a witness to testify about a "black cylinder" object made of rubber found in Lake's dresser, asserting that the evidence was

not relevant and was highly prejudicial. RP at 450. We disagree. Testimony regarding the object found in Lake's dresser was relevant to support AM's testimony that Lake used a sex toy when giving her massages, which in turn was relevant to prove that Lake massaged AM for the purpose of satisfying his sexual desire. Although the witness's description of the black cylinder object differed in certain respects from AM's descriptions of Lake's sex toys, the differences in the descriptions goes to the evidence's weight and not its admissibility. Judgments regarding the weight of evidence are within the exclusive function of the trier of fact and not subject to review. *State v. Rogers*, 44 Wn. App. 510, 517, 722 P.2d 1349 (1986). Further, we do not view the evidence's prejudicial effect as outweighing its probative value in light of AM's previous testimony regarding Lake's sex toys.

Next, Lake contends that the trial court erred by overruling his objection to hearsay testimony from his ex-wife, AL, regarding Lake's opinion about SL participating in counseling. The trial court properly overruled the hearsay objection because the testimony concerned a statement made by the defendant, which is not considered hearsay under ER 801(d)(2).

Finally, Lake contends that his convictions should be reversed because the police investigation into his crimes was flawed. Specifically, Lake argues that the police investigation into his crimes was flawed because the police did not interview all potential witnesses, did not record their interviews with AM and SL, and conducted its interview of SL while AM was present. Lake fails, however, to show that these alleged flaws resulted in any violation, constitutional or otherwise, requiring reversal of his convictions. Rather, Lake's SAG argument goes to the weight of the evidence and the credibility of witnesses, as his trial counsel argued

15

No. 42202-6-II

during closing.  Again, we do not weigh evidence or make credibility determinations, as this is left to the jury. *Thomas*, 150 Wn.2d at 874.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJØRGEN, J.

We concur:

PENOYAR, J.

WORSWICK, C.J.