# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72454-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRAVIS LEAR, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 19, 2016 |
| | ) | |

VERELLEN, A.C.J. — Travis Lear contends that impermissibly suggestive out-of-court identification procedures violated his right to due process. But substantial evidence supports the trial court's determination that the identifications were reliable and admissible despite any suggestive procedures. Lear's contentions that the predatory offense statute, RCW 9.94A.836, violates equal protection and is unconstitutionally vague are also without merit. We therefore affirm Lear's conviction for child molestation in the first degree.

## FACTS

On the morning of January 30, 2013, 11-year-old P.K. and her father, Jeremy K., went to the Enumclaw Public Library. After about an hour, P.K. asked if she could go to the car to eat an apple. Jeremy K. gave P.K. the car keys and remained in the library.

P.K. returned to the car and sat in the back seat while she ate an apple and read a library book. Suddenly, a man she had never seen before opened the door and ordered her out of the car. The man told P.K. to go to the library bathroom or he would kill her. P.K. believed the man would kill her if she did not comply.

P.K. followed the man back into the library, where he told her to check if anyone was in the women's bathroom. When P.K. said no one was in the bathroom, the man took her inside, followed her into in one of the stalls, and locked the door. He then ordered P.K. to remove her pants. When P.K. refused, the man put his hand down her pants, rubbed her vagina, and kissed her.

After about three to four minutes, the man threatened to kill P.K. if she told anyone. He then told her to return to the library and act as if nothing had happened.

In the meantime, Jeremy K. left the library and returned to the car. When he found the car empty and the keys on the steering wheel, he assumed that P.K. had gone to the bathroom. Jeremy K. then drove the car to the front of the library to wait for her.

A short time later, the back door "burst open"[1] and P.K. got in the car. She was upset and crying and said that "a man just took me to the bathroom and tried to have sex with me."[2] When Jeremy K. asked who the man was, P.K. pointed to a man who was walking away from the library and identified him as the assailant.

Jeremy K. ran after the man, later identified as Travis Lear, and confronted him. When Jeremy K. repeated P.K.'s accusation, Lear denied molesting P.K. and explained, "No, that wasn't me. It's another guy. I heard some screaming and was helping but the other guy is inside."[3] Lear identified himself as "Martin Little."[4]

Jeremy K. quickly returned to the car, where P.K. confirmed that Lear was the assailant. Jeremy K. confronted Lear again and told him to stay until the police arrived.

---

[1] Report of Proceedings (Aug. 4, 2014) at 98.

[2] Id.

[3] Id. at 105.

[4] Clerk's Papers at (CP) at 240 (Finding of Fact 1-P).

Lear told Jeremy K. to leave him alone and ran off.

At this point, Jeremy K. called 911. He described the suspect as a white male in his early 20s with pale skin and a scruffy beard and wearing a red coat, jeans, and a backpack. Officer Dustin Lobell responded to the 911 call. P.K. described her assailant as a white male in his 20s with an "orangish-reddish" beard, a "thick" build, and hair about two inches long.[5] The man was wearing a red jacket and blue and gray backpack.

Detective Mark Leitl accompanied P.K. and Jeremy K. to the nearby police station. Leitl then conducted a video recorded interview of P.K. and Jeremy K. in the same conference room. Leitl acknowledged that the best practice is to interview witnesses separately, but decided to interview P.K. in her father's presence because she was so upset.

At the beginning of the interview, Leitl told P.K. and Jeremy K. that the police had a suspect, "a gentleman in our lobby earlier today. We don't know what he was wearing, but he was a registered offender."[6] P.K.'s description matched that of Travis Lear, whom Leitl had seen at the police station shortly before the assault. While at the station, Lear had told a community corrections officer that he was planning to visit the library.

At one point during the interview, Leitl asked Jeremy K. to step out of the conference room. Leitl showed him a still photograph taken from the police surveillance video of Lear's visit earlier in the morning. Jeremy K. immediately said, "[T]hat's him"

---

[5] Id. (Finding of Fact 1-O).

[6] Id. (Finding of Fact 1-S).

and that he was "100% sure" it was the man he confronted outside the library.[7] P.K. remained in the conference room. When he returned, Jeremy K. told P.K. that the police knew who the assailant was and would be arresting him. P.K. did not see the photograph.

On the following day, January 31, 2013, P.K. and Jeremy K. returned to the police station and separately viewed a photomontage with six photographs. The photomontage did not use Lear's surveillance photograph. Both P.K. and Jeremy K. picked Lear's photograph. P.K. said she was 85 percent sure; Jeremy K. stated that he was 100 percent sure.

The State charged Lear with one count of child molestation in the first degree. Prior to trial, he moved to suppress, arguing that the suggestive identification procedures tainted Jeremy K.'s single photo identification, both Jeremy K.'s and P.K.'s photomontage identifications, and any in-court identifications.

Following a CrR 3.6 hearing, the trial court denied the motion to suppress. The court found that the single photograph identification procedure was impermissibly suggestive and that the photomontage procedure was not suggestive. But the court concluded that under the totality of the circumstances, even if both procedures were impermissibly suggestive, the identifications were reliable and the procedures not so suggestive as to taint in-court identifications.

The jury found Lear guilty as charged. Based on a predatory offense finding, the court imposed an indeterminate sentence of 300 months to life.

---

[7] CP at 241 (Finding of Fact 1-W).

## ANALYSIS

Lear contends the trial court erred in refusing to suppress all of P.K.'s and Jeremy K.'s identifications. He argues that the suggestive single photograph identification procedure, coupled with the improper and suggestive joint interview of Jeremy K. and P.K., and the comments that the police and Jeremy K. made to P.K. about arresting a suspect violated his due process rights and rendered all subsequent identifications unreliable and inadmissible.

We generally review the trial court's decision on a motion to suppress to determine whether substantial evidence supports the findings of fact and whether those findings, in turn, support the conclusions of law.[8] We review conclusions of law de novo.[9]

An out-of-court identification procedure violates due process if it is so impermissibly suggestive as to give rise to "a substantial likelihood of irreparable misidentification."[10] A defendant claiming a due process violation must first establish that the identification procedure was "impermissibly suggestive."[11] If the defendant satisfies this threshold burden, the court then assesses whether, under the totality of the circumstances, the procedure was so suggestive as to create a substantial likelihood of irreparable misidentification.[12]

---

[8] See State v. Broadaway, 133 Wn.2d 118, 130-31, 942 P.2d 363 (1997).

[9] State v. Schultz, 170 Wn.2d 746, 753, 248 P.3d 484 (2011).

[10] State v. Vickers, 148 Wn.2d 91, 118, 59 P.3d 58 (2002).

[11] Id.; see also State v. Guzman-Cuellar, 47 Wn. App. 326, 335, 734 P.2d 966 (1987).

[12] Vickers, 148 Wn.2d at 118.

The key factor in determining admissibility is whether sufficient indicia of reliability supported the identification despite any suggestiveness.[13] In making this determination, the court considers all relevant circumstances, including "(1) the opportunity of the witness to view the [suspect] at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the [suspect], (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation."[14]

The trial court here found that the single photograph identification procedure was impermissibly suggestive. The court also assumed, for purposes of its decision, that the photomontage was suggestive. The evidence amply supports the court's determination that the identifications were reliable and admissible despite any suggestive procedures.

First, as the trial court found, both P.K. and Jeremy K. had a significant opportunity to view the suspect's face. Jeremy K. approached the man twice, stood within a few feet of him, and had a brief conversation on each occasion. P.K. was able to view the suspect over an extended period time: when he opened the car door and ordered her out, accompanied her to the library, and locked himself in a stall with her. The suspect then forced P.K. to kiss him before he released her. P.K. also spoke multiple times with the man during the assault.

Second, both witnesses had ample opportunity to focus their attention on the man's face. Jeremy K. repeatedly attempted to confront the man that P.K. had identified as her assailant. P.K. was in close proximity to the suspect during a tense

---

[13] State v. Rogers, 44 Wn. App. 510, 515-16, 722 P.2d 1349 (1986).

[14] State v. Linares, 98 Wn. App. 397, 401, 989 P.2d 591 (1999); see also Neil v. Biggers, 409 U.S. 188, 198-200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

and fearful encounter and paid close attention to his ongoing instructions.

Third, Jeremy K. provided an accurate description of the suspect to the 911 operator and to the responding officers. P.K. also gave the responding officers a detailed and accurate description of the suspect's physical appearance and clothing. Her descriptions remained consistent throughout the course of her interview.

Fourth, both Jeremy K. and P.K. were highly certain of the accuracy of their identifications. Jeremy K. expressed 100 percent certainty for his identification of both the surveillance photograph and the photomontage. P.K. stated that she was 85 percent certain of her identification during the photomontage.

Finally, only about one hour elapsed between the assault and Jeremy K.'s identification of the surveillance photograph. The photomontage occurred only one day later.

Under the circumstances, substantial evidence supports the trial court's findings on the reliability factors. The findings, in turn, support the conclusion that the identifications were reliable and admissible despite any suggestiveness. The trial court did not err in admitting Jeremy K.'s and P.K.'s identifications.

Lear contends that Washington law on the admissibility of eyewitness evidence is flawed and "fails to guard sufficiently against unreliable identifications."[15] He suggests that the trial court erred in relying on several of the factors that supported the reliability determination. But Lear raises these arguments for the first time on appeal.

---

[15] Appellant's Br. at 21.

Because he fails to allege or demonstrate a manifest constitutional error, we decline to consider them.[16]

Lear next contends the predatory offense statute, RCW 9.94A.836, is unconstitutionally vague. He argues that the statute fails to provide ascertainable standards to protect against arbitrary enforcement.

An appellate court reviews the constitutionality of a statute de novo.[17] We presume that the statute is constitutional, and the party challenging that presumption bears the burden of proving beyond a reasonable doubt that the statute is unconstitutional.[18]

"In any vagueness challenge, the first step is to determine if the statute in question is to be examined as applied to the particular case or to be reviewed on its face."[19] A vagueness challenge to a statute that does not involve First Amendment rights must be evaluated "in light of the particular facts of each case."[20]

Lear does not allege that RCW 9.94.836 involves First Amendment rights. Nor does he contend that the statute is vague as applied to the facts of his case. Because Lear's challenge is purely facial, he fails to establish RCW 9.94A.836 is unconstitutionally vague.

Lear also contends that RCW 9.94A.836 violates equal protection, arguing that because RCW 9.94A.836 lacks any guidelines or limitations to inform the exercise of

---

[16] RAP 2.5(a)(3); see State v. Kirkland, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007);.

[17] State v. Watson, 160 Wn.2d 1, 5, 154 P.3d 909 (2007).

[18] In re Welfare of A.W., 182 Wn.2d 689, 701, 344 P.3d 1186 (2015).

[19] City of Spokane v. Douglass, 115 Wn.2d 171, 181, 795 P.2d 693 (1990).

[20] Id. at 182.

prosecutorial charging discretion, there is no rational basis for the resulting "grossly disparate sentences for similarly situated defendants."[21]

RCW 9.94A.836 provides:

(1) In a prosecution for rape of a child in the first degree, rape of a child in the second degree, or child molestation in the first degree, the prosecuting attorney shall file a special allegation that the offense was predatory whenever sufficient admissible evidence exists, which, when considered with the most plausible, reasonably foreseeable defense that could be raised under the evidence, would justify a finding by a reasonable and objective fact finder that the offense was predatory, unless the prosecuting attorney determines, after consulting with a victim, that filing a special allegation under this section is likely to interfere with the ability to obtain a conviction.

(2) Once a special allegation has been made under this section, the state has the burden to prove beyond a reasonable doubt that the offense was predatory. If a jury is had, the jury shall, if it finds the defendant guilty, also find a special verdict as to whether the offense was predatory. If no jury is had, the court shall make a finding of fact as to whether the offense was predatory.

(3) The prosecuting attorney shall not withdraw a special allegation filed under this section without the approval of the court through an order of dismissal of the allegation. The court may not dismiss the special allegation unless it finds that the order is necessary to correct an error in the initial charging decision or that there are evidentiary problems that make proving the special allegation doubtful.

The term "predatory" means:

(a) The perpetrator of the crime was a stranger to the victim, as defined in this section; (b) the perpetrator established or promoted a relationship with the victim prior to the offense and the victimization of the victim was a significant reason the perpetrator established or promoted the relationship; or (c) the perpetrator was: (i) A teacher, counselor, volunteer, or other person in authority in any public or private school and the victim was a student of the school under his or her authority or supervision. For purposes of this subsection, "school" does not include home-based instruction as defined in RCW 28A.225.010; (ii) a coach, trainer, volunteer, or other person in authority in any recreational activity and the victim was a participant in the activity under his or her authority or supervision; (iii) a pastor, elder, volunteer, or other person in authority in any church or

---

[21] Appellant's Br. at 33.

religious organization, and the victim was a member or participant of the organization under his or her authority; or (iv) a teacher, counselor, volunteer, or other person in authority providing home-based instruction and the victim was a student receiving home-based instruction while under his or her authority or supervision. For purposes of this subsection: (A) "Home-based instruction" has the same meaning as defined in RCW 28A.225.010; and (B) "teacher, counselor, volunteer, or other person in authority" does not include the parent or legal guardian of the victim.[22]

The term "stranger" means "the victim did not know the offender twenty-four hours before the offense."[23]

In State v. Halstien, our Supreme Court considered nearly identical provisions in RCW 13.40.135, the juvenile sexual motivation statute:

> (1) The prosecuting attorney shall file a special allegation of sexual motivation in every juvenile offense other than sex offenses as defined in RCW 9.94A.030(29)(a) or (c) when sufficient admissible evidence exists, which, when considered with the most plausible, reasonably consistent defense that could be raised under the evidence, would justify a finding of sexual motivation by a reasonable and objective fact-finder.
>
> (2) In a juvenile case wherein there has been a special allegation the state shall prove beyond a reasonable doubt that the juvenile committed the offense with a sexual motivation. The court shall make a finding of fact of whether or not the sexual motivation was present at the time of the commission of the offense. This finding shall not be applied to sex offenses as defined in RCW 9.94A.030(29)(a) or (c).
>
> (3) The prosecuting attorney shall not withdraw the special allegation of "sexual motivation" without approval of the court through an order of dismissal. The court shall not dismiss the special allegation unless it finds that such an order is necessary to correct an error in the initial charging decision or unless there are evidentiary problems which make proving the special allegation doubtful.[24]

---

[22] RCW 9.94A.030(39).

[23] RCW 9 .94A.030(51).

[24] 122 Wn.2d 109, 115, 857 P.2d 270 (1993) (quoting former RCW 13.40.135(1)-(3) (1990)).

In rejecting a vagueness challenge to the statute, the court concluded that these provisions sufficiently guided and limited prosecutorial discretion to prevent arbitrary enforcement:

> The statute also meets the second part of the vagueness test: it contains ascertainable standards of guilt which prevent arbitrary enforcement. As noted above, the State must present evidence of some conduct during the course of the offense as proof of the defendant's sexual purpose. The State carries this burden of proof and must establish the sexual motivation allegation beyond a reasonable doubt. RCW 13.40.135(2). In addition, the prosecutor's charging discretion is guided and limited by the statute. The prosecutor may not file the allegation unless "sufficient admissible evidence exists" which would justify a finding of sexual motivation by a "reasonable and objective fact-finder," and the prosecutor must weigh that evidence against the most plausible defense. RCW 13.40.135(1). The trial court must also enter a finding of fact whether or not the sexual motivation was present. RCW 13.40.135(2). These standards protect against arbitrary, ad hoc, or discriminatory enforcement.[25]

Lear does not present any meaningful analysis to distinguish Halstien or to support his claim that RCW 9.94A.836 contains no guidelines to inform or limit prosecutorial charging discretion. He has therefore failed to satisfy his burden of demonstrating an equal protection violation.

Affirmed.

WE CONCUR:

Trickey, J

---

[25] Id. at 121.