132 P.3d 767 (2006)
132 Wash.App. 454
STATE of Washington, Respondent,
v.
Jamaal L. JOHNSON, Appellant,
Deavondia Taylor and Binyam Beyene, and each of them, Defendants.
No. 54562-1-I.
Court of Appeals of Washington, Division 1.
April 10, 2006.
Christopher Gibson, Nielsen Broman Koch PLLC, Kathryn A. Russell Selk, Russell Selk Law Office, Seattle, WA, for Appellant.
Alice Degen, James Morrissey Whisman, King County Prosecutor's Office, Seattle, WA, for Respondent.

PUBLISHED IN PART
AGID, J.
¶ 1 A jury convicted Jamaal Johnson of second degree robbery. The trial court suppressed victim Abraham Castillo's identification of Johnson, ruling it was based on an impermissibly suggestive showup. Johnson argues that the court erred by allowing Castillo to identify a black jacket with patches as the jacket worn by one of the three robbers. We hold the trial court properly allowed Castillo's in-court identification of the jacket under the independent source doctrine. Identification of physical evidence, including clothing, is not subject to the same due process safeguards as is identification of a suspect. The trial court correctly left it to the jury to determine the weight to be given to Castillo's testimony identifying the jacket. We affirm.

FACTS
¶ 2 Around 9:30 p.m. on March 13, 2004, three African-American men in their mid-20's robbed Brendan Barr. One of them threatened him with a gun. After taking *768 Barr's wallet and bag, they ran about one block and got into a white car. Around 10:30 p.m., Abraham Castillo walked past three young African-American men at a bus stop. One of the men ran up behind Castillo and pulled him to the ground into a seated position. The other two men helped the third take Castillo's shoulder bag. The bag contained a CD player, CDs, wallet, keys, cell phone, pictures, and school related items. The incident took place near a street lamp. Castillo testified that a car then pulled up nearby, and the three men got in the car and drove off. He ran five blocks to a phone booth and called 911. When the 911 operator asked him if any of the robbers' clothing stood out, Castillo stated that "One had a white beanie on, they all were wearing super baggy jeans, I think one had a two-tone jacket that was like white, blue and white[.]" He also gave a description of the car, including a license plate number.
¶ 3 A few minutes later Officer Aaron Sausman talked to Castillo at the phone booth and, after learning that another officer had found a car matching Castillo's description, took him for a showup identification.[1] The car was registered to the driver, Jamaal Johnson. The passengers were Deavondia Taylor, Binyam Beyene, and a fourth man, who escaped before he could be arrested and was not involved in the showup. Police found Barr's bag on the front passenger side floor. They also found Castillo's CD player and headphones on the front passenger seat, his CDs and insurance card in the back passenger area, and his credit or ATM card in the center console. When police searched Johnson's pockets, they found two credit cards in Barr's name.[2]
¶ 4 At the time of the arrest and showup, Johnson was wearing a black jacket with patches or logos on it, Taylor wore a blue beanie/skull cap and black jacket, and Beyene had a beanie/skull cap. At the showup, Castillo identified Johnson, Taylor, and Beyene as the three men who robbed him.[3] The State ultimately charged Johnson with one count of first degree robbery for Barr and one count of second degree robbery for Castillo. Johnson moved to suppress Castillo's identification, arguing the showup was impermissibly suggestive.
¶ 5 At the suppression hearing, Castillo said when Officer Sausman arrived at the phone booth, Castillo told him that the suspects' clothing included a black jacket with patches, a blue and white oversized t-shirt, and a white beanie. Officer Sausman said Castillo began describing the suspects just as he heard over the radio that another officer had found the suspects' car. The radio diverted his attention from Castillo's description, so he was unsure what Castillo told him about the suspects' clothing. Castillo did not get a good look at the suspects' faces during the robbery, but did notice their clothes, and he identified the men at the showup only from their clothing. He also said he identified the men because the police brought him to the showup and he thought he had to identify them, although he would have said that he did not recognize them if he did not. The court ultimately found the showup impermissibly suggestive and suppressed Castillo's identification of Johnson.
¶ 6 Before trial Johnson also moved to suppress Castillo's identification of the black jacket with patches. The court denied the motion and said it believed Castillo's testimony that he remembered the black jacket with patches from the robbery, not the showup. The court ruled that the credibility of Castillo's identification was properly left to the jury.
¶ 7 At trial, Johnson's defense was that he was only driving the car and had no idea that his three passengers were robbing people *769 when they were not in the car.[4] Castillo testified that when he passed the three men at the bus stop he noticed one of them was wearing a black jacket with patches on it. He said that during the robbery he focused on the robbers' clothing. In addition to the jacket, he noticed one of the men was wearing an oversized blue and white shirt and another was wearing a white or silver skull cap/beanie. The jury found Johnson not guilty of first degree robbery in the count involving Barr, but convicted him of the second degree robbery of Castillo. Johnson appeals.

DISCUSSION

I. Jacket Identification

¶ 8 Suggestive identification procedures potentially violate due process because they increase the likelihood of misidentification.[5] Identification evidence is excluded when there is "`a very substantial likelihood of irreparable misidentification.'"[6] In Neil v. Biggers, the United States Supreme Court adopted safeguards to ensure the reliability of witness identification and to guarantee a defendant's due process rights.[7]
¶ 9 Johnson argues the trial court used the wrong analysis in denying his motion to suppress Castillo's identification of the black jacket. He contends that the clothing identification should be subject to the same Biggers "irreparable misidentification" analysis the court applied to Castillo's identification of Johnson. The State argues the trial court properly found that Castillo's jacket identification had an origin independent of the faulty showup, and therefore it was admissible even under the more stringent test Johnson urges us to apply. It also contends that physical evidence is subject only to a relevance standard, and the accuracy of Castillo's testimony was an issue of credibility properly left to the jury. The admission or refusal of evidence lies within the discretion of the trial court, and we will not reverse its decision absent an abuse of that discretion.[8] We review issues of law de novo.[9]

A. Independent Source Doctrine

¶ 10 Even if an identification procedure was impermissibly suggestive, courts will uphold an in-court identification if it has an "independent source."[10] The trial court allowed Castillo's identification of the jacket because it found credible his testimony from the initial suppression hearing that he remembered the jacket from the robbery, not the showup. This ruling was well within the court's discretion.
¶ 11 Castillo testified that he identified the suspects at the showup from their clothing rather than their faces. He walked past them at a bus stop just before the robbery took place.[11] The robbery happened at night and lasted only a couple minutes, but the area had adequate lighting from a nearby streetlight. During the robbery the men were right next to him, and he watched them walk away and get into a car. Further, *770 he accurately reported several clothing details and most of the license plate number in his 911 call.[12] He also testified that he described the black jacket with patches to Officer Sausman when Sausman arrived at the robbery scene. Sufficient evidence established that Castillo had an independent source for identifying the jacket, and the trial court properly admitted the testimony.

B. Due Process

¶ 12 In order to clarify the apparent confusion about the standard for identifying clothing or other inanimate objects, we address Johnson's argument that Castillo's identification of the jacket warrants the same due process protections as his identification of Johnson. State v. King[13] is the only Washington case to address whether a court must apply the Biggers test to a witness's identification of clothing. King has never been overruled, and it is still the law in Washington.
¶ 13 King matched the description of a robbery suspect, and police drove him to the crime scene for a witness identification. The victim walked around the police car looking at King. He did not recognize King, but he identified King's brown leather coat as the one the robber was wearing.[14] Although it found the identification procedure inherently suggestive, the trial court refused to apply the Biggers test because the witness identified the jacket, not King.
¶ 14 Division Two affirmed, holding that United States Supreme Court cases about the dangers of a suggestive identification addressed their concerns only to identification of people.[15] Because every person is unique, when a "witness identifies an individual as the perpetrator of a crime, not only will that be direct and highly persuasive evidence against defendant, but also the eyewitness will be reluctant to change his identification."[16] In contrast, the court held that when a witness identifies clothing, which is essentially the same in appearance as "hundreds or thousands of others," he is more likely to change his mind.[17] Further, the witness's credibility may be challenged through cross-examination, eliciting an admission that the defendant's jacket only looked like one he saw or was not necessarily the one the perpetrator wore.[18] Although the identification procedure was "somewhat suggestive," the court held that admitting the identification of the jacket "could not create an irreparable misidentification within the protective scope of Neil v. Biggers."[19] Although the identification testimony linked the defendant to the crime, it was only circumstantial evidence and was for the jury to weigh. "[E]ven evidence with some element of untrustworthiness is customary grist for the jury mill."[20]
¶ 15 King is in accordance with the great weight of federal and state authority holding that Biggers' procedural protections do not apply to identification of physical evidence.[21] *771 In Johnson v. Ross, the trial court suppressed a robbery victim's police station identification of the defendant but admitted the victim's testimony identifying the defendant's hat and jacket.[22] The Second Circuit held that identification of clothing did not carry with it the special dangers associated with identification of suspects.[23] While the circumstances under which a witness identified clothing could be suggestive, "it is the notorious inaccuracy of eyewitness identifications of suspects that gave the initial impetus to scholarly concern and judicial remedies."[24] The court stated:
We have no basis to believe that a witness's identification of clothing is either as susceptible to error or as persuasive to a jury as a witness's identification of a suspect. Indeed, a clothing identification is  particularly in this day and age of mass-marketing  often open to the argument that someone other than the perpetrator may have worn the same clothing. Thus, we find that identification of clothing is not a procedure so inherently "conducive to irreparable mistaken identification," as to provide the basis for a denial of due process.[[25]]
The court held that any suggestiveness in the identification of clothing is properly raised during cross-examination and argument.[26]
¶ 16 In Johnson v. Sublett, the defendant argued that a witness's identification of an automobile was tainted by an impermissibly suggestive procedure.[27] The Ninth Circuit disagreed, ruling that "[t]here is no authority holding that a defendant's due process right to reliable identification procedures extends beyond normal authenticity and identification procedures for physical evidence offered by the prosecution."[28]
¶ 17 Here, Johnson argues that his situation is unique because the black jacket with patches was a distinctive item easily distinguished from other clothing. But the only case Johnson cites for his proposition that identification of clothing could warrant additional due process safeguards is Overton v. State, a 1988 Florida case not followed by any other jurisdiction.[29] The analysis in King, Ross and Sublett is persuasive. We reaffirm King's holding that identification of physical evidence does not trigger the additional due process protections Biggers requires for admitting out-of-court suspect identifications. Although the showup may have been suggestive and the jacket may be more unique than some other items of clothing, Castillo identified physical evidence, and the trial court properly admitted the testimony. The credibility and persuasiveness of testimony identifying the physical evidence is for the jury to weigh.[30] The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. See RCW 2.06.040; CAR 14.
WE CONCUR: DWYER and BECKER, JJ.
NOTES
[1] Officer Jason Thompson was on patrol at the time of Castillo's 911 call and ran the plate number given by Castillo, 311 MOB, but nothing turned up. He then ran similar plate numbers and found a white Daewoo registered to Jamaal Johnson with a plate number 911 MQB.
[2] Johnson testified at trial that he thought the credit cards belonged to the third, unidentified passenger, who told Johnson to use them to get gas for his car. Johnson also had $160 on him at the time of the arrest, but he testified that he had withdrawn $340 from the bank while visiting his aunt in Port Orchard earlier in the day.
[3] At a separate showup, Barr identified Taylor as the gunman but was unable to identify Johnson or Beyene.
[4] Johnson testified that he had known Taylor for some time. On the night of the robberies, Taylor called and asked Johnson to pick him up near Northgate Mall. There were two men Johnson did not know with Taylor.
[5] Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
[6] Id. (quoting Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)).
[7] 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
[8] State v. Guloy, 104 Wash.2d 412, 421, 705 P.2d 1182 (1985), cert. denied, 475 U.S. 1020, 106 S.Ct. 1208, 89 L.Ed.2d 321 (1986).
[9] State v. T.E.C., 122 Wash.App. 9, 25, 92 P.3d 263 (citing State v. McCormack, 117 Wash.2d 141, 143, 812 P.2d 483 (1991), cert. denied, McCormack v. Washington, 502 U.S. 1111, 112 S.Ct. 1215, 117 L.Ed.2d 453 (1992)), review denied, 152 Wash.2d 1012, 106 P.3d 243 (2004).
[10] State v. Cook, 31 Wash.App. 165, 172, 639 P.2d 863 (citing State v. Hilliard, 89 Wash.2d 430, 573 P.2d 22 (1977); State v. Hewett, 86 Wash.2d 487, 545 P.2d 1201 (1976)), review denied, 97 Wash.2d 1018, 1982 WL 226399 (1982).
[11] At the hearing on Castillo's identification of Johnson, he said he was not paying particular attention to the suspects at the bus stop. But shortly thereafter he stated that he had noticed the black jacket with patches when he passed the bus stop.
[12] The license plate number Castillo reported was one number and one letter off.
[13] 31 Wash.App. 56, 639 P.2d 809 (1982). The case was not raised or argued at trial.
[14] Id. at 59, 639 P.2d 809.
[15] King, 31 Wash.App. at 60, 639 P.2d 809 (citing United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)).
[16] Id. at 61, 639 P.2d 809.
[17] Id.
[18] Id.
[19] Id. at 62, 639 P.2d 809.
[20] Id. (citing Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)).
[21] See Johnson v. Sublett, 63 F.3d 926, 931 (9th Cir.), cert. denied, 516 U.S. 1017, 116 S.Ct. 582, 133 L.Ed.2d 504 (1995); Johnson v. Ross, 955 F.2d 178, 180-81 (2d Cir.1992); Inge v. Procunier, 758 F.2d 1010, 1014-1015 (4th Cir.), cert. denied, sub nom. Inge v. Sielaff, 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 85 (1985); Dee v. State, 273 Ga. 739, 740, 545 S.E.2d 902 (2001) (citing King); Hughes v. State, 735 So.2d 238, 261 (Miss.1999) (citing King), cert. denied, 528 U.S. 1083, 120 S.Ct. 807, 145 L.Ed.2d 680 (2000); People v. Miller, 211 Mich.App. 30, 41, 535 N.W.2d 518 (1995) (citing King), appeal denied, 451 Mich. 907, 550 N.W.2d 530 (1996); Brooks v. State, 560 N.E.2d 49, 57-58 (Ind. 1990); State v. Roscoe, 145 Ariz. 212, 224, 700 P.2d 1312 (1984) (citing King); State v. Cyr, 122 N.H. 1155, 1159, 453 A.2d 1315 (1982); State v. Bruns, 304 N.W.2d 217, 219 (Iowa 1981); Commonwealth v. Carter, 271 Pa.Super. 508, 515-16, 414 A.2d 369 (1979); People v. Coston, 40 Colo. App. 205, 207-08, 576 P.2d 182 (1977), affirmed, 633 P.2d 470 (1981).
[22] 955 F.2d 178 (2d Cir.1992).
[23] Id. at 180.
[24] Id. at 180-81 (emphasis in original).
[25] Id. at 181 (citations omitted) (quoting Foster v. California, 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969)).
[26] Id.
[27] 63 F.3d 926 (9th Cir.1995).
[28] Id. at 932 (citing State v. Roscoe, 145 Ariz. 212, 700 P.2d 1312, 1324 (1984), cert. denied, 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 525 (1985)).
[29] 531 So.2d 1382, 1386-87 (Fla.App.1988) (reversing in part because defense counsel failed to move to suppress witness's clothing identification after impermissibly suggestive procedure).
[30] King, 31 Wash.App. at 62, 639 P.2d 809. See also Miller, 211 Mich.App. at 41, 535 N.W.2d 518 ("We add Michigan to the growing list of states that hold that any suggestiveness in the identification of inanimate objects is relevant to the weight, not the admissibility, of the evidence.").