RICHARD D. JOHNSON,
*Court Administrator/Clerk*

*The Court of Appeals*
of the
*State of Washington*
*Seattle*

DIVISION I
One Union Square
600 University Street
98101-4170
(206) 464-7750
TDD: (206) 587-5505

March 10, 2014

Prosecuting Atty King County
W554 King County Courthouse
516 Third Avenue
Seattle, WA, 98104
paoappellateunitmail@kingcounty.gov

Raul Robert Martinez
516 3rd Ave Ste W554
Seattle, WA, 98104-2362
raul.martinez@kingcounty.gov

Cynthia B Jones
1425 Broadway # 544
Seattle, WA, 98122-3854
cjones@joneslegalgroup.net

Christopher Gibson
1908 E Madison St
Seattle, WA, 98122-2842
gibsonc@nwattorney.net

CASE #: 69943-1-I
State of Washington, Respondent v. Andre White, Appellant

King County, Cause No. 12-8-02046-1.SEA

Counsel:

Enclosed is a copy of the opinion filed in the above-referenced appeal which states in part:

"Affirmed."

Counsel may file a motion for reconsideration within 20 days of filing this opinion pursuant to RAP 12.4(b). If counsel does not wish to file a motion for reconsideration but does wish to seek review by the Supreme Court, RAP 13.4(a) provides that if no motion for reconsideration is made, a petition for review must be filed in this court within 30 days.

In accordance with RAP 14.4(a), a claim for costs by the prevailing party must be supported by a cost bill filed and served within ten days after the filing of this opinion, or claim for costs will be deemed waived.

Should counsel desire the opinion to be published by the Reporter of Decisions, a motion to publish should be served and filed within 20 days of the date of filing the opinion, as provided by RAP 12.3 (e).

Sincerely,

Richard D. Johnson
Court Administrator/Clerk

jh

Enclosure

c:     The Honorable J. Wesley Saint Clair
       Andre White



FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2014 MAR 10 AM 10: 01

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69943-1-I |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| ANDRE WHITE, d.o.b. 02/27/95, | ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) ) | FILED: March 10, 2014 |

BECKER, J. — Andre White challenges the admissibility of a victim's in-court identification of him as the juvenile who stole a silver necklace. Based on the victim's testimony, the court found White guilty of theft in the first degree. Finding no abuse of discretion by the trial court, we affirm.

Where a pretrial identification procedure was improper, a court may nevertheless permit an in-court identification if the State establishes by clear and convincing evidence that the in-court identification was based upon observations of the suspect other than the inadmissible pretrial identification. U.S. v. Wade, 388 U.S. 218, 240, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). Even if the previous identification procedure was impermissibly suggestive, courts will uphold an in-court identification if it has an independent source. State v.

Johnson, 132 Wn. App. 454, 459, 132 P.3d 767 (2006), review denied, 159 Wn.2d 1002 (2007).

Reliability "is the linchpin in determining the admissibility of identification testimony." Manson v. Brathwaite, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). "Identification evidence is excluded when there is 'a very substantial likelihood of irreparable misidentification.'" Johnson, 132 Wn. App. at 458 (internal quotation marks omitted), quoting Neil v. Biggers, 409 U.S. 188, 198, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). We will not reverse the trial court's decision to admit or exclude the evidence absent an abuse of discretion. Johnson, 132 Wn. App. at 459.

White's trial occurred on November 27, 2012. Pretrial, he moved to suppress any identification by the victim on the ground that the pretrial identification process was impermissibly suggestive. The trial court held a CrR 3.6 hearing. Witnesses at the hearing were JN, the victim; Ruth Medsker, the principal of West Seattle High School; and Detective Brian Ballew of the Seattle Police Department.

JN testified that on April 27, 2012, he went to a West Seattle fast food restaurant after school. JN, 14 years old at the time, saw his "friend Joe there hanging out with a few of his buddies." One of those buddies introduced himself to JN as "Andre." At the restaurant, JN sat across the table from "Andre" for about 45 minutes.

As the group left the restaurant, someone approached JN from behind, grabbed his silver chain necklace, snapped it off, and ran down an alley. JN

chased the person for about 30 seconds until he lost sight of him. JN testified that the thief looked back at him twice while fleeing. He recognized the thief as the "Andre" he had met at the restaurant. JN described him as about five feet, six inches tall at the time, having a shaved head, and wearing blue jeans and a coat.

JN testified that with this information, he immediately went to West Seattle High School, where his friend Joe was a student, figuring that the thief might also attend the school. He told Principal Medsker about the theft, and she showed him pictures of boys who fit the description he gave. At first, JN testified that his friends at the restaurant told him the thief's last name was White and he gave the principal that name. Later, however, he testified he told the police that he came up with the thief's last name by going through the photos the principal showed him.

According to JN, as he and the principal looked through photos on Medsker's computer, the principal commented on the background of some of the students JN selected as possible suspects. She told JN which students never had problems at school, received good grades, and were involved in extracurricular activities. They looked at about 30 photographs before JN selected a photo of the appellant.

When Medsker clicked on the appellant's photo, his full name was shown on the computer screen: Andre White. JN identified White as the person who stole his necklace. JN testified that Medsker then indicated White had been

suspended or expelled from the high school and was attending an alternative school.

Medsker's testimony differed from JN's on some points. Medsker said JN gave her the name of "Andrew" or "Andre" but did not provide a last name. While JN testified that he "spotted a couple that I said like might be him," the principal testified that JN pointed only to White as the suspect. Medsker testified she did not recall making any comments about the students in the photos JN viewed. She also testified White had not been expelled from West Seattle High School but rather chose to go to another school.

Medsker said she told JN to call the police. Detective Ballew testified that he contacted JN at his school two weeks later and showed him a photo montage that contained photos of appellant White and five others. JN picked White's photo from the montage. The picture was the same one he had selected earlier in Principal Medsker's office.

At the CrR 3.6 hearing, JN identified White in court as the person who stole his necklace. He testified that he recognized him based on his facial structure, shaved head, height, and physical structure. He said he was 99 percent certain that White was the person who sat across from him at the restaurant on the day of the incident.

The trial court found the identification procedures used by the school principal and the detective impermissibly suggestive and suppressed the related evidence. But the court allowed JN's in-court identification of White, finding it

came from an independent source, JN's memory of the incident, and was reliable.

To determine the reliability of identification testimony, courts consider factors first set out in Biggers. The factors include: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. Biggers, 409 U.S. at 199-200; Manson, 432 U.S. at 114. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." Manson, 432 U.S. at 114.

Application of the Biggers factors is illustrated in State v. Booth, 36 Wn. App. 66, 70-71, 671 P.2d 1218 (1983). The court in Booth considered a woman's identification of the defendant in connection with a bank robbery conducted by two men wearing Halloween masks. Shortly after the robbery, a mailman noticed a man in a nearby area remove his shirt and quickly enter a maroon car with Missouri license plates and a female driver at the wheel. A woman passing by also noticed the car and a man running down the street with money in his hands. Booth, 36 Wn. App. at 67. The witnesses gave a description to police, who later stopped a vehicle matching that description. Police took the woman to the scene, where officers were holding the defendant in the back of a patrol car. The woman identified the defendant there as the man she had seen running with money in his hands. Booth, 36 Wn. App. at 67. Although the court found this one-man showup procedure to be suggestive, the court nonetheless held that the

woman's identification was sufficiently reliable to be admitted into evidence. The indicia of reliability included the facts that the woman was driving slowly, it was a clear day, she observed the defendant for 45 seconds, she paid particular attention to the car because it had Missouri plates and she was from Missouri, and the identification was unequivocal and took place only 30 to 40 minutes after she first observed the defendant. Booth, 36 Wn. App. at 71.

JN sat across the table from White for 45 to 50 minutes, a fact the court found significant in terms of JN's opportunity to view White and his degree of attention—unlike cases "where all you see is a fleeting glance of someone as they run away."

Also weighing in favor of a finding of reliability was JN's initial description of White. He accurately described White as five feet, six inches tall, having a shaved head, and wearing blue jeans and a coat. In court, he recognized White's facial structure, haircut, height, and physical structure. Although seven months had passed since the robbery, JN described his degree of confidence that White was the person who took his necklace as 99 percent, based on his memory of the incident. The court found that JN's account was articulate and observant overall.

We conclude the juvenile court did not abuse its discretion in allowing the in-court identification.

Affirmed.

WE CONCUR:

Becker, J.

Spearman, A.C.J.

Lau, J.