IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | |
| | ) | No. 69912-1-I |
| Respondent, | ) | |
| | ) | ORDER WITHDRAWING |
| v. | ) | OPINION |
| | ) | |
| CRUZ BLACKSHEAR, | ) | |
| | ) | |
| Appellant. | ) | |

IT IS HEREBY ORDERED that the opinion of this court in the above-entitled case filed April 28, 2014 is withdrawn to correct a typographical error on page 7 and a new opinion will be filed.

DATED this 19th day of May 2014.

_____
Presiding Judge

IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | |
|---|---|---|
| | ) | No. 69912-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| CRUZ BLACKSHEAR, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: May 19, 2014 |

SPEARMAN, C.J. — Cruz Blackshear appeals his conviction on one count of robbery in the second degree, arguing that the trial court committed reversible error in denying his motion to suppress evidence of the victim's showup identification and subsequent in-court identification. Blackshear contends that defense counsel's failure to adequately raise the suppression issue amounted to ineffective assistance of counsel. In a statement of additional grounds for review, Blackshear further asserts that (1) the dog tracking evidence was contaminated, (2) witness testimony was not credible, (3) police officers ignored his request for an attorney during questioning, and (4) the prosecutor improperly argued that Blackshear is left handed. We conclude that Blackshear is unable to demonstrate that he suffered prejudice as a result of the alleged errors, and that his additional grounds for review lack merit. We therefore affirm.

## FACTS

On the afternoon of October 15, 2012, John Couldry visited his wife at Providence Hospital in Everett. As Couldry left the hospital and walked towards his car, he was confronted by a man who demanded his money. Couldry, who was 59 years old and recovering from surgery, denied having any money and kept his hands in his sweatshirt pockets to protect his abdomen. The man asked Couldry if he had a knife. When Couldry said he did not, the man struck Couldry on the side of the head. Couldry, who felt that he was not in any condition to fight back, offered the man his cell phone. The man took the phone, and Couldry saw him walk across the street towards a park. Couldry immediately returned to the hospital and asked security to call the police.

Sonya Rundle was sitting at the bus stop next to the park at the time of the incident. Rundle saw a young man leave the park and approach an older man. Rundle said the young man was wearing jeans but no shirt. She said the older man took out his cell phone, and the young man took it and ran back to the park where a woman was waiting. Rundle saw the man put on a black jacket, and the pair took off down an alley. Rundle later positively identified Blackshear at trial as the young man who took the cell phone.

When police arrived, Couldry and Rundle provided a description of the man who took the phone and his female companion. Couldry told police he is colorblind, but that he thought the robber was wearing a light brown or tan t-shirt and Levi's jeans. A description was broadcast, and police then began to search the area. A K-9 unit from the Lynnwood Police Department was also called.

Officer Christopher Reid saw a couple that resembled the description of the suspects. The man was later identified as Blackshear, and the woman as his friend Heather Ray. Officer Reid asked Blackshear and Ray if they had seen anyone matching the description of the suspects. They denied seeing anyone. Officer Reid notified other officers that he had located the suspects. He then recontacted Blackshear and Ray, informed them that they matched the description of the suspects, and asked them to remain so police could bring a witness to their location. When Couldry arrived, he positively identified Blackshear as the man who took his cell phone. Couldry later identified Blackshear in court as well.

Meanwhile, the police dog tracked a scent from the park in the direction Rundle and Couldry said the man had fled. The dog tracked directly to the patrol car where Blackshear was seated.

Blackshear was arrested, and Ray gave a written statement. Ray said she saw Blackshear leave the park and go across the street to talk to "some old guy." Verbatim Report of Proceedings VRP (12/16/12) at 46. Ray saw Blackshear take something from the man and walk away. When Blackshear returned, he told Ray that he had stolen the man's phone and said they needed to walk away. Ray and Blackshear walked away together, but split up after a short time. Five minutes later, Ray received a call on her cell phone from an unidentified number. The caller was Blackshear. He directed Ray to walk toward him. They walked together towards a motel located about a block from the hospital, where they

were stopped by police. The route Ray described was the same route the police dog tracked from the park to Blackshear.

Blackshear was charged with one count of second degree robbery, alleged to have been committed while he was on community custody. A jury found Blackshear guilty. The trial court imposed a standard range sentence. He now appeals.

## DISCUSSION

### Ineffective Assistance of Counsel

Blackshear argues that the trial court violated his right to due process by admitting Couldry's identification of him as the robber because it was the product of an impermissibly suggestive single person showup identification procedure. He also contends that Couldry's in-court identification was tainted by the impermissibly suggestive out-of-court identification.[1] Accordingly, Blackshear contends that defense counsel was ineffective for failing to file a CrR 3.6 motion to suppress the identification evidence.

At trial, defense counsel indicated in an oral motion in limine that he was making a "request to suppress the identification by Mr. Couldry as essentially an impermissible one-person show-up." VRP (12/26/12) at 24. Defense counsel conceded that he had not addressed this issue in his trial brief, but explained that he had not been able to interview Couldry until after the trial brief was due. The trial court denied the motion, but expressly stated that defense counsel could

---

[1]. State v. Williams, 27 Wn. App. 430, 443, 618 P.2d 110 (1980) (where pretrial identification creates a substantial likelihood of misidentification, in-court eyewitness identification may also be suppressible).

renew the argument upon offering authority to the court and the State. Defense counsel, however, did not renew the motion or object to admission of the in-court identification during trial.

To demonstrate ineffective assistance of counsel, appellant must show that: "(1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." State v. MacFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). We presume that counsel's representation was effective. State v. Hendrickson, 129 Wn.2d 61, 77, 917 P.2d 563 (1996). This presumption can be overcome by a showing that "his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Davis, 152 Wn.2d at 673. "A failure to establish either element of the test defeats the ineffective assistance of counsel claim." In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

On this record, we cannot determine whether defense counsel's decision not to follow up his oral motion in limine with a written CrR 3.6 motion to suppress was unreasonable. Defense counsel stated that he decided to raise the suppression issue after interviewing Couldry and looking at the photographs. However, he had not yet thoroughly researched the issue at the time he orally raised it. It is possible that upon researching the issue, defense counsel

- 5 -

reasonably believed that the motion to suppress Couldry's identification would not be successful, particularly where the remaining evidence implicated Blackshear in the crime. It is also possible that counsel simply neglected to follow up on the issue.

Regardless of whether defense counsel's representation was deficient, we conclude that the representation did not prejudice Blackshear. To establish a due process violation in an identification procedure, a defendant bears the burden of showing the procedure was impermissibly suggestive. State v. Linares, 98 Wn. App. 397, 401, 989 P.2d 591 (1999). If the court determines the showup was impermissibly suggestive, it then considers "whether the procedure created a substantial likelihood of irreparable misidentification" under the totality of the circumstances. State v. Vickers, 148 Wn.2d 91,118, 59 P.3d 58 (2002). In determining the reliability of an identification, courts consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Linares, 98 Wn. App. at 401.

It is well-established that showup identifications are not per se impermissively suggestive. Neil v. Biggers, 409 U.S. at 198; State v. Rogers, 44 Wn. App. 510, 515-516, 722 P.2d 1349 (1986). "Showups held shortly after a crime is committed and in the course of a prompt search for the suspect have

been found to be permissible." State v. Booth, 36 Wn.App. 66, 71, 671 P.2d 1218 (1983) (citing State v. Kraus, 21 Wn. App. 388, 392, 584 P.2d 946 (1978)). Showups are not necessarily suggestive even if the suspect is handcuffed and standing near a patrol car or surrounded by police officers. State v. Guzman-Cuellar, 47 Wn. App. 326, 335, 734 P.2d 966 (1987); State v. Shea, 85 Wn. App. 56, 60, 930 P.2d 1232 (1997), abrogated on other grounds by Vickers, 107 Wn. App. 960, 29 P.3d 752 (2001); United States v. Hines, 455 F.2d 1317, 1329 (D.C. Cir. 1971).

Blackshear acknowledges that showups are not necessarily suggestive, but asserts that this rule has resulted in scores of wrongful convictions. He asks this court to reexamine its case law and conclude that Couldry's showup identification was impermissibly suggestive. We decline Blackshear's invitation to abandon a well-established principle, particularly under the facts of this case. At the time of the showup identification, Blackshear was standing near police officers and a police car, but had not been handcuffed. Couldry testified that he did not necessarily expect that the person who police had detained was the person who robbed him. The police dog tracked the scent from the park to Blackshear after Couldry had already identified him. Blackshear has not met his burden of showing that the showup was unnecessarily suggestive. If the defendant fails to make this showing, the inquiry ends. Vickers, 148 Wn.2d 91.

We conclude that Blackshear has failed to show that defense counsel's failure to file a CrR 3.6 motion to suppress the showup identification or object to

Couldry's in-court identification, resulted in prejudice. Accordingly, Blackshear's ineffective assistance of counsel claim fails.[2]

<u>Statement of Additional Grounds for Review</u>

First, Blackshear argues that the dog tracking evidence was unreliable because it was contaminated. Blackshear notes that the search occurred approximately 45 minutes after the robbery, in a public area that was not cordoned off, and that a track may be impacted if the area has been traveled by more than one person. Defense counsel did not move to exclude the dog tracking evidence. Even if he had, the evidence would have been admissible. "As a condition precedent to admission of tracking <u>dog</u> evidence it must be shown that: (1) the handler was qualified by training and experience to use the dog, (2) the dog was adequately trained in tracking humans, (3) the dog has, in actual cases, been found by experience to be reliable in pursuing human track, (4) the dog was placed on track where circumstances indicated the guilty party to have been, and (5) the trail had not become so stale or contaminated as to be beyond the dog's competency to follow." <u>State v. Welker</u>, 37 Wn. App. 628, 636, 683 P.2d 1110 (1984) (citing <u>State v. Loucks</u>, 98 Wn.2d 563, 566, 656 P.2d 480

---

[2] The State also argues that Blackshear failed to preserve the suppression issue by failing to timely raise it below. Generally, an appellant cannot raise an issue for the first time on appeal unless there is a manifest error affecting a constitutional right. RAP 2.5(a); <u>McFarland</u>, 127 Wn.2d at 333. The defendant has the burden of showing prejudice by identifying the constitutional error and explaining how the error affected his rights. <u>Id.</u> It is the showing of actual prejudice that makes the error "manifest" and allows for appellate review. <u>Id.</u> (citing <u>State v. Scott</u>, 110 Wn.2d 682, 688, 757 P.2d 492 (1988)). Even if we assume without deciding that Blackshear waived the suppression issue, the result again turns on a showing of prejudice. As discussed above, Blackshear is unable to make this required showing.

(1983)). The record contains ample proof that all of these requirements were met.

Second, Blackshear challenges Ray's credibility as a witness for the State. Blackshear notes that Officer Reid told Ray that the victim had identified Blackshear as the robber, and that Blackshear was not carrying two phones at the time of arrest.[3] According to Blackshear, Officer Reid tore up Ray's original statement because it did not corroborate his story, and coerced Ray to write a new statement that matched his version of events by threatening to put her in jail.

In contrast, Officer Reid testified that he told Ray her "noncooperation could implicate her as a suspect in the crime as an after-the-fact accomplice," but he denied manipulating Ray into saying what he wanted to hear. VRP (12/27/12) at 132-35. Officer Reid had "a general recollection" that Ray may have begun a statement that was thrown away, but could not specifically remember what if anything had been written down. VRP (12/27/12) at 134. And Ray testified that "[i]t's not the fact about not wanting to go to jail, it's what I saw and I told them." VRP (12/26/12) at 72.

"An essential function of the fact finder is to discount theories which it determines unreasonable because the finder of fact is the sole and exclusive judge of the evidence, the weight to be given thereto, and the credibility of witnesses." State v. Bencivenga, 137 Wn.2d 703, 709, 974 P.2d 832 (1999)

---

[3] Blackshear also asserts that Officer Reid "admitted to using impermissible suggestiveness." Appellant's Statement of Additional Grounds for Review at 2. This is incorrect. Officer Reid testified that Couldry identified Blackshear at a showup identification, but he never admitted that the process was impermissibly suggestive.

(quoting State v. Snider, 70 Wn.2d 326, 327, 422 P.2d 816 (1967)). "Credibility determinations are within the sole province of the jury and are not subject to review." State v. Myers, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997) (citing State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990)). We cannot review the jury's determination of Ray's credibility as a witness.

Third, Blackshear contends that the police improperly ignored his request to speak with an attorney and continued to question him without giving full Miranda[4] warnings. Because Blackshear objected to the admission of statements he made at the time of arrest, the trial court held a CrR 3.5 hearing. "[F]indings of fact entered following a CrR 3.5 hearing will be verities on appeal if unchallenged, and, if challenged, they are verities if supported by substantial evidence in the record." State v. Broadaway, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). "Miranda claims are issues of law requiring de novo review." State v. Daniels, 160 Wn.2d 256, 261, 156 P.3d 905 (2007) (citing State v. Jackman, 156 Wn.2d 736, 746, 132 P.3d 136 (2006)).

"Miranda warnings must be given when a suspect endures (1) custodial (2) interrogation (3) by an agent of the State." State v. Heritage, 152 Wn.2d 210, 214, 95 P.3d 345 (2004) (citing Miranda, 384 U.S. at 444)). If a suspect requests counsel at any time during a custodial interview, questioning must cease until a lawyer has been made available or the suspect reinitiates conversation. Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.E.2d 378 (1980). The suspect's request for counsel must be unambiguous. Davis v. U.S., 512 U.S.

---

[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

452, 459, 114 S.Ct. 2350, 129 L. Ed.2d 362 (1994) (holding that defendant's remark "Maybe I should talk to a lawyer" was not a request for counsel).

Here, the trial court issued the following written conclusions pursuant to CrR 3.5, based solely on undisputed facts:

> The Court finds that the defendant's early comment to Officer Reid "Well if I am under arrest then you should talk to my lawyer" is an ambiguous statement and not an invocation of the right to counsel. It is not a request for an attorney. The defendant was then later fully and properly advised of his Miranda rights by Officer Reid, and understood those rights and agreed to waive them. He then answered Officer Reid's questions for a time until he invoked his right to silence. His statements to Officer Reid prior to invoking his right to silence are admissible at trial as the result of a proper advice and waiver of Miranda rights.
>
> The defendant's pre-Miranda statements to Officer Marrs were volunteered by the defendant and were not the product of any custodial interrogation by Officer Marrs. Accordingly, they will be admissible at trial as volunteered statements by the defendant.

CP at 76.

There is sufficient evidence in the record to support the findings of fact, and the trial court's conclusions regarding the admissibility of Blackshear's statements are legally correct.[5]

Fourth, Blackshear challenges an argument made by the prosecutor during closing argument. The prosecutor stated that Blackshear is left-handed and noted that Couldry was struck on the right side of the head, consistent with a

---

[5] In his opening brief, Blackshear argued that remand is required because the trial court erred in failing to enter written findings of fact and conclusions of law following the CrR 3.5 hearing. The State has since supplemented the record to include the CrR 3.5 certificate. The State requested that Blackshear be given an opportunity to file supplemental briefing limited to the trial court's findings and conclusions in that certificate. Blackshear, however, did not submit a reply brief or otherwise request an opportunity to file supplemental briefing. We note that the conclusions of law in the certificate track the trial court's oral ruling.

strike delivered by a left-handed person. Blackshear asserts that he is ambidextrous rather than left-handed, and argues that the prosecutor improperly introduced evidence unrelated to the charged crime after promising not to.

Blackshear is mistaken. A defendant claiming prosecutorial misconduct must show both improper comments and resulting prejudice. State v. Evans, 163 Wn. App. 635, 643, 260 P.3d 934 (2011). In response to Blackshear's pretrial motion to exclude prior misconduct under ER 404(b) and ER 403, the prosecutor said "I have no intention of questioning or bringing up topics unrelated to the actual robbery incident in this case." VRP (12/26/2012) at 13. Regardless of whether Blackshear is ambidextrous or left-handed, the prosecutor's argument was relevant to the charged crime and did not implicate prior misconduct. The argument was not improper or prejudicial.

Affirmed.

_Spear, C.J._

WE CONCUR:

_Schindler, J._          _Appelwick, J._

- 12 -