# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72760-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL DEMETRIUS ANDERSON, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: March 9, 2015 |
| | ) | |

Cox, J. – Daniel Anderson appeals his conviction for robbery in the first degree. Anderson fails to show that he received ineffective assistance of counsel. The State presented sufficient evidence to support the conviction. The cumulative error doctrine is inapplicable. And none of the claims raised in Anderson's statement of additional grounds warrants relief. We affirm.

The State charged Anderson with one count of robbery in the first degree based on an incident that occurred on November 3, 2012. The information alleged that Anderson, acting as a principal or an accomplice, unlawfully took personal property from Vicki Ann Montes-Boles by use or threatened use of immediate force, violence, or fear of injury, and that Anderson or an accomplice inflicted bodily injury upon Montes-Boles.

At trial, the State presented the testimony of Montes-Boles. She testified that she knew Anderson prior to the incident. She said that in September 2011, he sold her $60 worth of fake drugs. She said she saw him again a few weeks later, and the two of them exchanged words about that sale.

Montes-Boles then testified about November 3, 2012, the date of the robbery. She said she had two encounters with Anderson prior to the robbery. She first saw Anderson at the Stop-and-Go. She testified that the two of them exchanged words about him selling "fake dope." Later that afternoon, she saw Anderson again. She testified that Anderson's co-defendant, Dejuan Allen asked to use her phone. She said that she declined, and Anderson said to Allen, "Get the bi[*]ch's phone." She said she walked into a store to get away.

Montes-Boles then described the robbery. She testified that after leaving the store, she walked up to a group of people. A woman in the group asked Montes-Boles to make a call for her. Montes-Boles sat down and took out her phone. At that point, five or six people "came around" her. She said she was hit on both sides of her head. She did not know when Anderson and Allen arrived, but she testified that once they did, the group of people disappeared. Montes-Boles testified that Allen hit her several times and went down her shirt to retrieve money. She testified that Anderson yelled, "Get the phone." And she testified that a third person picked up the phone after she lost control of it. After the robbery, Montes-Boles went to Safeway and called the police.

Police officers responded, and Montes-Boles went with one of the officers in his patrol car to look for the suspects. Eventually, they saw Anderson and Allen. Montes-Boles recognized them. Montes-Boles remained in the police car while the police talked to Anderson and Allen. At some point, police officers brought Anderson and Allen to the front of the patrol car. Montes-Boles identified

them as the men who robbed her. She testified that she was one hundred percent positive at the time of the identification.

Anderson did not testify. In closing, his defense attorney argued that Anderson did not know anything about the robbery. He argued that Montes-Boles was not credible and had a motive to lie.

The jury convicted Anderson of first degree robbery as charged.

Anderson appeals.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Anderson first argues that his trial counsel failed to provide constitutionally effective representation. Specifically, he asserts that trial counsel was ineffective for failing to move to exclude evidence of an impermissibly suggestive show-up, for failing to object to evidence and questions related to Anderson's alleged prior drug-dealing, and for adducing testimony regarding the logistics of drug dealing. We disagree with all of these arguments.

The right to counsel includes the right to effective assistance of counsel.[1] In order to prevail on an ineffectiveness claim, the defendant must prove that (1) counsel's performance was deficient and (2) the defendant was prejudiced by the deficient performance.[2] Counsel's performance was deficient if it fell below "an objective standard of reasonableness."[3] The defendant was prejudiced if there is "a reasonable probability that, but for counsel's unprofessional errors, the result

---

[1] Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[2] Id. at 687; State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[3] Strickland, 466 U.S. at 688.

3

of the proceeding would have been different."[4] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[5]

"Deficient performance is not shown by matters that go to trial strategy or tactics."[6] Reviewing courts make "every effort to eliminate the distorting effects of hindsight and must strongly presume that counsel's conduct constituted sound trial strategy."[7]

### Show-Up Identification

Anderson argues that his trial counsel was ineffective for failing to move to exclude evidence "of the impermissibly suggestive show-up" of Anderson to Montes-Boles. We disagree.

When an ineffective assistance of counsel claim is based on a failure to move to suppress evidence, the defendant must show that the motion to suppress would have been granted in order to show actual prejudice.[8]

An unduly suggestive identification procedure may violate a defendant's right to due process, but only if the suggestiveness created a substantial likelihood of irreparable misidentification.[9]

---

[4] Id. at 694.

[5] Id.

[6] State v. Saunders, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

[7] In re Pers. Restraint of Rice, 118 Wn.2d 876, 888-89, 828 P.2d 1086 (1992).

[8] McFarland, 127 Wn.2d at 333-34.

[9] State v. Maupin, 63 Wn. App. 887, 896-97, 822 P.2d 355 (1992).

In challenging the identification procedure, the defendant has the burden to show that the procedure was impermissibly suggestive.[10] Show-up identifications are not per se impermissible suggestive.[11] In general, a show-up identification held shortly after the crime and in the course of a prompt search for the suspect is permissible.[12] "The inquiry ends if no suggestiveness is present, and, in such a case, the uncertainty or inconsistency in identification testimony goes only to its weight, not its admissibility."[13]

If the defendant shows that the procedure was impermissibly suggestive, under the second step of the analysis, "the court must determine whether, considering the totality of the circumstances, the suggestiveness created a substantial likelihood of irreparable misidentification."[14] "The key inquiry in determining admissibility of the identification is reliability."[15] Traditionally, courts consider the following factors:

> [1] the opportunity of the witness to view the [suspect] at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of [the witness's] prior description of the [suspect], [4] the level of certainty demonstrated at the confrontation, and [5] the time between the crime and the confrontation.[16]

---

[10] State v. Linares, 98 Wn. App. 397, 401, 989 P.2d 591 (1999).

[11] State v. Guzman-Cuellar, 47 Wn. App. 326, 335, 734 P.2d 966 (1987); State v. Rogers, 44 Wn. App. 510, 515, 722 P.2d 1349 (1986).

[12] State v. Booth, 36 Wn. App. 66, 71, 671 P.2d 1218 (1983).

[13] State v. Hendrix, 50 Wn. App. 510, 513, 749 P.2d 210 (1988).

[14] Linares, 98 Wn. App. at 401.

[15] Rogers, 44 Wn. App. at 515-16.

[16] Id. at 516 (citing Manson v. Brathwaite, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977)).

Here, Anderson contends that the show-up was impermissibly suggestive because it was made after a police officer "suggested to [Montes-Boles] in a leading manner that Mr. Anderson was the suspect, then spoke to Mr. Anderson in a lighted area visible to her for 8 to 10 minutes prior to the show-up, and then displayed Mr. Anderson to her under a spotlight at a close distance to her." But as just stated, a show-up identification does not in itself constitute undue suggestiveness. Anderson does not explain how the officer "suggested" "in a leading manner" that Anderson was the suspect. And he fails to provide authority to support his contention that the show-up was suggestive for the reasons he identifies.

But even assuming the show-up was suggestive, Anderson fails to show that the identification was unreliable. Montes-Boles was acquainted with Anderson and had known him since September, 2011. She saw him several times on the evening of the robbery and she recognized him. This is apparent from their first encounter, as the two of them exchanged words about him selling "fake dope." Montes-Boles testified that she saw Anderson just prior to the robbery, and she heard Anderson's voice during the robbery. This testimony reveals that she was paying attention to Anderson, as she was aware of his location. Additionally, Montes-Boles's prior descriptions of Anderson were generally accurate. And at the time of the confrontation, Montes-Boles was one hundred percent certain about the identification. She remained one hundred percent positive at trial. Finally, as Anderson concedes, the identification was not too long after the robbery.

6

In sum, Anderson fails to show that the procedure in this case resulted in a substantial likelihood of irreparable misidentification. Thus, Anderson cannot show that a motion to suppress would have been granted. As a result, he cannot show actual prejudice, and his claim fails the second prong of the Strickland test.

### Alleged Prior Drug-Dealing

Anderson next argues that his trial counsel was ineffective for failing to object to evidence and questions related to Anderson's alleged prior drug-dealing. We disagree.

When the defendant claims ineffective assistance based on counsel's failure to challenge the admission of evidence, the defendant must show (1) an absence of legitimate strategic or tactical reasons supporting the challenged conduct; (2) that an objection to the evidence would likely have been sustained; and (3) that the result of the trial would have been different if the evidence had not been admitted.[17]

"The decision of when or whether to object is a classic example of trial tactics."[18] For example, trial counsel may not want to object to avoid emphasizing the testimony.[19] "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal."[20]

---

[17] Saunders, 91 Wn. App. at 578.

[18] State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).

[19] In re Pers. Restraint of Davis, 152 Wn.2d 647, 714, 101 P.3d 1 (2004).

[20] Madison, 53 Wn. App. at 763.

Anderson first contends that trial counsel should have objected to Montes-Boles's testimony about Anderson's alleged prior drug-dealing. Specifically, Montes-Boles testified that she bought drugs from Anderson, that he sold her fake drugs, and that the two of them had exchanged words about this sale on other occasions. Anderson argues that this testimony was inadmissible ER 404(b) evidence and should have been excluded.

But Anderson fails to show the absence of a legitimate strategic or tactical reason supporting this conduct. In fact, in closing argument, trial counsel used this evidence to bolster his theory of the case—that Montes-Boles did not like Anderson and had a motive to falsely accuse him. Given that this was a legitimate strategic choice by trial counsel, we need not further review this argument.

Anderson next contends that trial counsel should have objected to a question posed by the prosecutor that was "expressly intended to elicit additional testimony regarding Mr. Anderson's alleged crack-cocaine dealing."[21] Anderson points to the following testimony:

> [Prosecutor]: [D]id you have any contact with [Anderson] after the date that you place your clean and sober date, September 21st, up until the events that happened in this trial?
>
> [Montes-Boles]: No, no, no.
>
> [Prosecutor]: Okay.

---

[21] Brief of Appellant at 28.

8

[Montes-Boles]: Why? I'm not smoking crack. I don't need his services, and he didn't sell real crack, so I really didn't need his services, you know.[22]

For the same reasons just discussed, Anderson also fails to show that the failure to object in these circumstances was not tactical. Accordingly, we reject this argument.

### "Logistics" of Drug Dealing

Finally, Anderson contends that trial counsel was ineffective "for adducing testimony regarding the 'logistics' of drug dealing."[23] We again disagree.

On cross-examination of Montes-Boles, trial counsel asked her why she referred to Anderson and Allen as "partners." Anderson argues that this question caused Montes-Boles "to render a completely nonresponsive answer and instead to opine about 'the logistics of being a drug dealer' and what a drug dealer usually does . . . ."[24]

But again, Anderson fails to show that trial counsel was ineffective. First, it does not appear that trial counsel intended to elicit this testimony. Moreover, this case rested entirely on the credibility of Montes-Boles. The jury had heard testimony of Montes-Boles's extensive drug history, and trial counsel's entire defense was based on showing that she was an unreliable witness. It is plausible that trial counsel elicited this testimony in an attempt to highlight the fact that Montes-Boles was a long time drug user and was not believable. In

---

[22] Report of Proceedings (April 24, 2013) at 117.

[23] Brief of Appellant at 27.

[24] Id. at 28.

short, Anderson fails to show that this was not another instance of trial tactics by defense counsel.

In sum, Anderson fails in his burden to show he received ineffective assistance of counsel.

## SUFFICIENCY OF THE EVIDENCE

Anderson next argues that the evidence is insufficient to support the conviction for first degree robbery. We disagree.

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt."[25] "When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant."[26] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[27]

To sustain the conviction for assault in the second degree, the State had to prove beyond a reasonable doubt the following six elements:

> (1) That on or about November 3, 2012, [Anderson], or a person to whom [Anderson] was an accomplice, unlawfully took personal property from the person or in the presence of another;

> (2) That [Anderson], or a person to whom [Anderson] was an accomplice, intended to commit theft of the property;

---

[25] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[26] Id.

[27] Id.

10

(3) That the taking was against the person's will by [Anderson's] use or threatened use of immediate force, violence or fear of injury to that person, or by a person to whom [Anderson] was an accomplice's use or threatened use of immediate force, violence or fear of injury to that person;

(4) That the force or fear was used by [Anderson], or by a person to whom [Anderson] was an accomplice, to obtain or retain possession of the property or to prevent or overcome resistance to the taking or to prevent knowledge of the taking;

(5) That in the commission of these acts or in the immediate flight therefrom [Anderson] inflicted bodily injury, or a person to whom [Anderson] was an accomplice inflicted bodily injury; and

(6) That any of these acts occurred in the State of Washington.[28]

Here, the State presented sufficient evidence to support the conviction. Montes-Boles testified that Allen took money from her person and a third person took her cell phone. She testified that Allen hit her and put his hands down her shirt to get her money. She sustained visible injuries and she testified that she still has headaches.

Further, Montes-Boles testified that during the robbery she heard Anderson yell, "Get the phone. Get the phone." The jury was instructed that a person is an accomplice in the commission of a crime if, "with knowledge that it will promote or facilitate the commission of the crime," he "solicits, commands, encourages, or requests another person to commit the crime."[29]

In short, the evidence was sufficient.

---

[28] Clerk's Papers at 31.

[29] Id. at 33.

Anderson argues that Montes-Boles's identification was not reliable because it was "of his backside in a dark alley," it was at a distance of 30 to 40 feet away, she articulated no particular features of his clothing, and she did not identify him by name until later. But Montes-Boles testified that she was "a hundred percent" certain at the time of the identification. And at trial she remained 100 percent positive. Further, the factors identified by Anderson go to Montes-Boles's credibility and the persuasiveness of the evidence. And this court defers to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.[30]

Anderson also argues that Montes-Boles never saw Anderson with her telephone, that she never saw him strike her, and that she could not even testify that Anderson was present. But Montes-Boles testified that Anderson was present, as she could hear him yelling. Further, under an accomplice liability theory, the State did not need to prove that Anderson was the one that took the phone or caused injury to Montes-Boles. And Anderson does not appear to contest that there was sufficient evidence to establish that he was an accomplice. Thus, these arguments are not persuasive.

## CUMULATIVE ERROR

Anderson argues that he is entitled to relief under the cumulative error doctrine. We disagree.

---

[30] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

The cumulative error doctrine "is limited to instances when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial."[31]

Here, because there was no error, the cumulative error doctrine does not apply.

## STATEMENT OF ADDITIONAL GROUNDS

Anderson raises a number of claims in his statement of additional grounds. None warrant reversal.

First, Anderson presents several arguments that he received ineffective assistance of counsel. We reject all of them.

Anderson first claims that trial counsel was ineffective for failing to pursue a misidentification defense. A number of his arguments go to this claim. For example, he asserts that trial counsel failed to conduct a reasonable investigation and explore the possibility that he had been misidentified. And he asserts that his clothing was different from the description of clothing initially provided by Montes-Boles, that trial counsel should have pointed out this discrepancy, and that trial counsel should have admitted into evidence a letter written by Anderson's friend confirming his clothing that night. But trial counsel's decision not to pursue a misidentification defense was a tactical decision. We reject it as a basis for an ineffective assistance claim.

Anderson next argues that trial counsel failed to subpoena several witnesses for trial. Ordinarily, the decision whether to call a witness is a tactical

---

[31] State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).

13

decision and will not support an ineffective assistance claim.[32] We decline to review this claim any further.

Anderson next argues that trial counsel violated attorney-client privilege and that he had a conflict with trial counsel. Because this argument is not supported by evidence in the record, we do not review it.[33]

Lastly, Anderson argues that trial counsel failed to argue that Anderson's speedy trial rights had been violated. He asserts that the case was over 200 days old and that he never signed any continuances

It appears that the court granted four continuances in this case. Three of the continuances are explained in the record. The first continuance was granted "to continue negotiations and for the defense to investigate, interview witnesses and prepare for trial." The second continuance is not in the record. The third continuance stated, "Defense counsel's vacation schedule precludes trial on date scheduled, further negotiations. Plus the information presented at the hearing on 3/22/2013." And the fourth continuance stated that good cause existed because the prosecutor was unavailable and the judge was ill.

"Allowing counsel time to prepare for trial is a valid basis for [a] continuance."[34] Additionally, scheduling conflicts may be considered in granting

---

[32] State v. Jones, 33 Wn. App. 865, 872, 658 P.2d 1262 (1983).

[33] See RAP 10.10(c) (stating that an appellate court will not consider an argument made in a statement of additional grounds for review if it does not inform the court of the nature and occurrence of the alleged errors).

[34] State v. Flinn, 154 Wn.2d 193, 200, 110 P.3d 748 (2005).

continuances.[35] And a trial court may extend the time for trial for unavoidable or unforeseen circumstances, including unavailability of counsel.[36] This court reviews the grant of a continuance for abuse of discretion.[37] It appears that the court properly exercised its discretion when it granted the continuances based on the reasons identified above. But without the reasons for the second continuance, or "the information presented at the hearing on 3/22/2013" to support the third continuance, this court cannot fully review Anderson's speedy trial claim. Accordingly, we decline to do so here.

Second, Anderson presents several arguments alleging prosecutorial misconduct. We also reject these arguments.

Prosecutorial misconduct is grounds for reversal if the prosecutor's conduct was both improper and prejudicial.[38] The court reviews a prosecutor's conduct in the full trial context, including the evidence presented, the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions.[39] When a defendant fails to object at trial to alleged prosecutorial misconduct, he waives any error on appeal unless he can show

---

[35] Id.

[36] State v. Carson, 128 Wn.2d 805, 814, 912 P.2d 1016 (1996).

[37] State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004).

[38] State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011).

[39] Id.

that the misconduct was so flagrant or ill-intentioned that the trial court could not have cured the error by instructing the jury.[40]

Anderson first argues that the prosecutor elicited irrelevant testimony of Anderson's prior drug crimes. As stated earlier, Anderson's trial counsel did not object to this testimony. And Anderson fails to show either improper conduct or prejudice. Evidence of other crimes, wrongs or acts may be admissible for other purposes, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[41] Montes-Boles's answers were in response to the State's questions about how she knew Anderson. Further, to the extent that this testimony was irrelevant under ER 404(b), there is no indication that its elicitation was so flagrant and ill-intentioned that no curative instruction would have remedied the prejudice.

Anderson next argues that the prosecutor injected personal beliefs about the evidence into closing argument. He asserts that the prosecutor indicated during closing argument that the defendant may have disposed of the cell phone prior to being apprehended by authorities. But "[t]he prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury."[42] This was not improper.

Anderson next argues that the prosecutor withheld portions of the 911 tape and that this violates the hearsay rule. But the record shows that the

---

[40] State v. Weber, 159 Wn.2d 252, 270, 149 P.3d 646 (2006).

[41] ER 404(b).

[42] State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997).

prosecutor sought to admit only the portion of the 911 tape where Montes-Boles was speaking, and not the portion of the tape where the store manager was speaking, after Anderson himself raised a hearsay concern.

Anderson next argues that the prosecutor urged Anderson's co-defendant Allen to write a statement against Anderson, stating he must implicate Anderson in some way to the charged crime in order for the State to grant Allen's plea deal. Because this claim is not supported by evidence in the record, we do not consider it further.

Lastly, Anderson argues that the prosecutor committed misconduct by not calling witnesses "that apparently witnessed the alleged incident, and would have testified truthfully as to confirming the fact that defendant Anderson never had contact with Ms. Montes-Boles . . . ."[43] But this does not support a claim for prosecutorial misconduct. We reject it.

We affirm the judgment and sentence.

<u>                       </u>

WE CONCUR:

<u>                    </u>                      

---

[43] Statement of Additional Grounds for Review at 39.